# Exhibit "B"

**ASHRAFUL M. ISLAM**
**CHAPTER 13, BANKRUPTCY NO. 22-13182-AMC**
**ADDENDUM TO PROOF OF CLAIM**

As of the petition date, the following sums are due and owing from the Debtor on account of the Loan:

| | |
|---|---:|
| Principal Balance | $137,750.90 |
| Interest Due through 11/29/22 | $89,668.28 |
| Late Fees Due | $5,230.11 |
| Maturity Fee | $6,700.51 |
| Attorneys' Fees and Costs through 11/29/22 | $106,723.64 |
| | |
| Total: | $346,136.80 |

Per Diem (19%) $72.70

The amounts due on the Loan continue to accrue additional interest and attorneys' fees, costs and expenses. Interest continues to accrue at the default rate of $72.70 *per diem*. In addition, the loan documents provide that the Debtor is obligated to reimburse Claimant for all legal fees and costs incurred in connection with the loan and all costs incurred in preserving and maintaining the mortgaged property.

1.    Basis for Claim

On or about September 19, 2017, Excel Financial Corp. ("Claimant") entered into a loan transaction with the Debtor and Dilruba Islam pursuant to which Claimant made a loan to Borrower and Dilruba Islam in the principal amount of $160,000.00 (the "Loan") in accordance with the terms and conditions of that certain Loan Agreement between the Debtor, Dilruba Islam and Claimant dated September 19, 2017 (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto, incorporated herein and marked as Exhibit "A". The Loan is evidenced by that certain mortgage note dated September 19, 2017 in the original principal amount of $160,000.00 from the Debtor and Dilruba Islam (the "Note"), evidencing the Debtor and Dilruba Islam's obligation to repay the Loan. A true and correct copy of the Note is attached hereto, incorporated herein and marked as Exhibit "B". In order to secure the Debtor and Dilruba Islam's obligation to repay the Loan, on or about September 19, 2017, the Debtor and Dilruba Islam executed and delivered to Claimant an Open-End Mortgage on the property located at 407-409 W. Main Street, Lansdale, PA 19446, which mortgage was duly recorded with the Recorder of Deeds of Montgomery County on September 21, 2017 at Book 14411, Page 00494 et seq.(the "Mortgage"). A true and correct copy of the Mortgage is attached hereto, incorporated herein and marked as Exhibit "C".

As further security for the Debtor and Dilruba Islam's obligations under the Note, on or about September 19, 2017, the Debtor and Dilruba Islam executed and delivered to Claimant an assignment of rents and leases for the Mortgaged Property dated September 19, 2017, which assignment of rents and leases was duly recorded with the duly recorded with the Recorder of Deeds of Montgomery County on September 21, 2017 at Book 6062, Page 00699 et seq. (the

"Assignment of Rents and Leases"). A true and correct copy of the Assignment of Rents and Leases is attached hereto, made a part hereof and marked as Exhibit "D".

Claimant is also the holder of a judgment against the Debtor and Dilruba Islam entered in the Court of Common Pleas of Montgomery County at No. 2020-02775, which judgment operates as a lien against all real property owned by the Debtor and Dilruba Islam in Montgomery County at the time of entry of the judgment.

The Loan Agreement, Note, Mortgage and all other documents executed and delivered to Excel in connection with the Loan are sometimes collectively referred to hereinafter as the "Loan Documents".

Prior to the Petition Date, the Debtor and Dilruba Islam defaulted on their obligations to Claimant under the Loan and Loan Documents. As a consequence thereof, on or about February 7, 2020, judgment was entered in the Court of Common Pleas of Montgomery County at no. 2020-02775 in favor of Claimant and against the Debtor and Dilruba Islam, jointly and severally, in the amount of $188,518.21, plus interest from January 31, 2020 at the per diem rate of $61.63. Had the Debtor and Dilruba Islam not defaulted on their obligations to Claimant, the Loan would still have been due and payable in full prior to the Petition Date, as the Loan Maturity Date was September 19, 2020.

The documents attached hereto are not intended to reflect all documentation in connection with the obligations owed by Debtor to Claimant (Claimant's liens, assignments and security interest) and thus, Claimant reserves the right to supplement the attached documents should any questions or disputes arise as to Claimant's claim, liens and security interest. Claimant likewise reserves the right to amend and/or modify the amount of its claim from time to time.

This proof of claim is filed as a secured claim. Without prejudice to any of Claimant's rights and liens, however, this proof of claim shall be deemed a timely filed unsecured claim if, at any time, any of the debts owed to Claimant are held to be not fully secured. Nothing herein is or shall be deemed to limit, restrict and/or modify any of the Claimant's rights and remedies, all of which are preserved hereby.

{Client Files/005696/00106/01449209.DOCX;1}

# EXHIBIT "A"

## LOAN AGREEMENT

**THIS LOAN AGREEMENT** is made this 19th day of September, 2017, by and between **EXCEL FINANCIAL CORP.** ("Lender") and **ASHRAFUL ISLAM and DILRUBA ISLAM** (the "Borrower").

1.    **DEFINITIONS.** The terms set forth below shall be defined as follows.

   1.1    "Anti-Money Laundering Laws" means those laws, regulations and sanctions, state and federal, criminal and civil, that (a) limit the use of and/or seek the forfeiture of proceeds from illegal transactions; (b) limit commercial transactions with designated countries or individuals believed to be terrorists, narcotics dealers or otherwise engaged in activities contrary to the interests of the United States; (c) require identification and documentation of the parties with whom a Financial Institution conducts business; or (d) are designed to disrupt the flow of funds to terrorist organizations. Such laws, regulations and sanctions shall be deemed to include the Patriot Act, the Bank Secrecy Act, the Trading with the Enemy Act, 50 U.S.C. App. Section 1, *et seq.*, the International Emergency Economic Powers Act, 50 U.S.C. Section 1701, *et seq.*, and the sanction regulations promulgated pursuant thereto by the OFAC, as well as laws relating to prevention and detection of money laundering in 18 U.S.C. Sections 1956 and 1957.

   1.2    "Bank Secrecy Act" means the Bank Secrecy Act, 31 U.S.C. Sections 5311, *et seq.*

   1.3    "Borrower" means **ASHRAFUL ISLAM and DILRUBA ISLAM**, adult individuals.

   1.4    "Borrower's Address" is: 1611 Clearview Road, Lansdale, PA 19446.

   1.5    "Collateral" means all property, assets or rights that secure the payment of the Obligations, whether now owned or existing or hereafter created or acquired and the cash and noncash proceeds thereof.

   1.6    "Date of Agreement" is the date first written above.

   1.7    "Event of Default" means each and every event specified as such in Section 6 of this Agreement or in any Loan Document.

   1.8    "Financial Institution" means a United States Financial Institution as defined in 31 U.S.C. 5312, as periodically amended.

   1.9    "Lender's Address" is: 455 Pennsylvania Avenue, Suite 2LF, Fort Washington, PA 19034.

   1.10    "Loan Document(s)" means any Loan Agreement, Note, Mortgage or any other document heretofore, now or hereafter executed by Borrower to Lender, together with all modifications, extensions and/or renewals thereof.

1.11    "Maturity Date" is the three year anniversary of the Date of Agreement, unless such date is extended on one or more occasions, then the last date of the last such extension.

1.12    "Mortgaged Property" means 407-409 W. Main Street, Lansdale, PA 19446.

1.13    "Obligations" means all indebtedness, obligations and liabilities of Borrower to Lender of every kind and description, direct or indirect, secured or unsecured, joint or several, absolute or contingent, due or to become due, including, but not limited to, any overdrafts, whether for payment or performance, now existing or hereafter arising, whether presently contemplated or not, regardless of how the same arise or by what instrument, agreement or book account they may be evidenced, or whether evidenced by any instrument, agreement or book account, including, but not limited to, all loans (including any loan by modification, renewal or extension), all indebtedness, all undertakings to take or refrain from taking any action, all indebtedness, liabilities or obligations owing from Borrower to others which Lender may have obtained by purchase, negotiation, discount, assignment or otherwise; and all interest, taxes, fees, charges, expenses and attorney's fees (whether or not such attorney is a regularly salaried employee of Lender) chargeable to Borrower or incurred by Lender under this Agreement, or any other document or instrument delivered in connection herewith, therewith or in connection with any other loan between Lender and Borrower, whether now existing or entered into at a later date.

1.14    "OFAC" means the Office of Foreign Assets Control, Department of the Treasury.

1.15    "Patriot Act" means the USA PATRIOT Act of 2001, Pub. L. No. 107-56.

1.16    "Person" means any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

1.17    "Security Interest" means any transaction which creates or provides for a lien or security interest by agreement.

1.18    "Specially Designated National and Blocked Persons" means those Persons that have been designated by executive order or by the sanction regulations of OFAC as Persons with whom U.S. Persons may not transact business or must limit their interactions to types approved by OFAC.

1.19    "U.S. Person" means any United States citizen, any entity organized under the laws of the United States or its constituent states or territories, or any entity, regardless of where organized, having its principal place of business within the United States or any of its territories.

To the extent not defined in Section 1, (or in any other Loan Documents), unless the context otherwise requires, all other terms contained in this Agreement shall have the meanings attributed to them by the Uniform Commercial Code in force in the Commonwealth of Pennsylvania ("UCC"), as of the Date of Agreement, to the extent that same are used or defined therein.

To the extent not defined in Section 1, unless the context otherwise requires, all accounting terms in this Agreement shall be construed in accordance with Generally Accepted Accounting Principles as of the Date of Agreement, to the extent that same are used or defined herein.

2.    **COMMITMENTS.**

2.1    Subject to the terms and conditions of this Loan Agreement and the Loan Documents, Lender agrees to lend to Borrower, and Borrower agrees to borrow from Lender, the amount of One Hundred Sixty Thousand Dollars on or about the Date of Agreement.

2.2    At the Closing of the Loan, Lender shall place a sum of One Thousand Nine Hundred Fifty ($1,950.00) Dollars of the Loan proceeds into a non-interest bearing comingled FDIC insured "Interest Reserve" which will fund monthly interest payments due under the Loan Documents. At such time as the "Interest Reserve" is depleted, the Borrower shall be responsible for timely submitting all payments due under the Loan Documents. The funds held in the "Interest Reserve" constitute Collateral hereunder and may be applied in Lender's sole discretion. Nothing contained herein shall release Borrower from Borrower's obligation to make all payments, when due, under the Loan Documents.

2.3    At the Closing of the Loan, Lender shall place a sum of the Loan proceeds which when added to the monthly payment required under the Mortgage for monthly tax escrow payments, will create sufficient funds for Lender to pay the real estate tax bills on or before the discount date. The payments described under this paragraph shall be placed into a non-interest bearing comingled FDIC insured "Tax Reserve" which will fund the payment of the real estate tax bills. At any time that the "Tax Reserve" is insufficient to pay the real estate tax bills when due, Borrower shall deliver, upon demand, such funds which Lender requires to restore the Tax Reserve. The Borrower shall be responsible for timely submitting all tax bills to Lender.. The funds held in the "Tax Reserve" constitute Collateral hereunder and may be applied in Lender's sole discretion.

3.    **REPRESENTATIONS AND WARRANTIES.**

3.1    Borrower represents and warrants to Lender, and such representations and warranties shall be continuing, so long as any Obligations shall remain outstanding, as follows:

3.1.1    Borrower: (i) has all necessary licenses and permits to carry on and operate all of its properties; and (ii) has the power and authority to own the

Collateral, to enter into and perform the Loan Documents and to incur the Obligations. Borrowers are adult individuals, *sui juris*.

3.1.2   Borrowers have not changed their name, or acquired any business

3.1.3   This Agreement and any Loan Documents constitute valid and legally binding Obligations of Borrower and are enforceable against Borrower in accordance with their respective terms.

3.1.4   Borrower has filed all Federal, state and local tax returns and other reports Borrower is required to file and has paid or made adequate provision for payment of all such taxes, assessments and other governmental charges.

3.1.5   All property owned or utilized by Borrower is in compliance and will continue to be in compliance with all requirements of all current and future federal, state, and local environmental laws, statutes, regulations and ordinances, including, but not limited to, Pennsylvania "common law"; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, *et seq.*, as amended ("CERCLA"), the Resource Conservation and Recovery Act, 42 U.S.C. §6901, *et seq.*, as amended ("RCRA"), the Toxic Substances Control Act, 15 U.S.C. §2601, *et seq.*, as amended ("TSCA"), the Clean Air Act, 42 U.S.C. §7401, *et seq.*, as amended, and all applicable Pennsylvania laws (all such Federal, state, county, municipal or other laws, ordinances or regulations are hereinafter collectively referred to as the "Environmental Laws").

3.1.6   The execution and performance of this Agreement and any Loan Document will not violate or result in a default or in the creation or imposition of any lien or encumbrance upon any of the assets of Borrower (immediately, with the passage of time, or with the giving of notice and the passage of time) under any other contract, agreement, or instrument to which Borrower is a party or by which Borrower is bound, nor will it result in the acceleration of any obligation under any mortgage, lien, lease, franchise, license, permit, agreement, instrument, order, arbitration award, judgment or decree, or in the termination of any license, franchise, lease, or permit, to which Borrower is a party or by which it is bound; and it will not violate or conflict with any other restriction of any kind or character to which Borrower is subject.

3.1.7   Borrower incurs the Obligations herein from Lender for business purposes only and shall not incur the Obligations for personal, household or family purposes.

3.1.8   There is no claim, loss, contingency, litigation or proceeding whether or not pending, threatened, or imminent against or otherwise affecting Borrower that involves the possibility of any judgment or liability not fully covered by insurance or that may result in a material adverse change

in the business, properties, prospects, operation or condition (financial or otherwise) of Borrower.

3.1.9   Borrower has complied with all applicable statutes, regulations, ordinances, court decrees, or other directives of the United States of America and all states, counties, municipalities, and agencies with respect to the manufacture and sale of Borrower's goods, the rendition of Borrower's services and/or the conduct of Borrower's business.

3.1.10   Borrower has heretofore delivered to Lender current financial statements, acceptable to Lender, which were prepared by independent certified public accountants.  The financial statements were true, correct and complete and were prepared in accordance with Generally Accepted Accounting Principles, consistently applied and present fairly the financial position and results of operations of Borrower as of the date of and for the period involved.  The financial statements make full and adequate provision for all obligations, liabilities and commitments (fixed and contingent) of Borrower as of the date of the financial statements.  Since the date of the financial statements, there has been no material adverse change in the business, prospects, operation or condition (financial or otherwise) of Borrower.

3.1.11   With respect to any Employee Benefit Plan maintained by Borrower, no Prohibited Transaction or Reportable Event (as defined in Title IV of the Employee Retirement Income Security Act of 1974, as amended) has occurred and is continuing; Borrower is not subject to a thirty (30) day notice to the Pension Benefit Guaranty Corporation, and Borrower will comply with the provisions of the Employee Retirement Income Security Act of 1974, as amended and the Internal Revenue Code of 1986, as amended.

3.1.12   Borrower is the owner of the Collateral free and clear of all Security Interests, encumbrances or liens, except liens which arise by operation of law with respect to Obligations of Borrower which are not yet due and payable; and Borrower will defend the Collateral against all claims and demands of all persons at any time claiming an interest therein.

## 4.   GENERAL COVENANTS.

4.1   Borrower covenants and agrees that so long as any obligations shall remain outstanding:

4.1.1   Borrower shall not permit any further mortgage, pledge, Security Interest in or lien or encumbrance upon any of the property, assets or rights of Borrower.

4.1.2   Borrower shall not merge or consolidate with or sell, assign, or otherwise transfer or dispose of (whether in one transaction or in a series of

transactions) all or substantially all of its assets (whether now owned or hereafter acquired or arising) to, any person or entity, or acquire all or substantially all of the assets or the business of any person or entity.

4.1.3   Borrower shall continue to engage in an efficient and economical manner in a business of the same general type as conducted by it on the Date of Agreement.

4.1.4   Borrower shall furnish to Lender:

(a)   Signed copies of their annual federal income tax return by April 30 of each year that this Loan is outstanding; and

(b)   Promptly and in form satisfactory to Lender, such other information as Lender may reasonably request from time to time.

4.1.5   Comply with all present and future laws, rules and regulations (federal, state and local) applicable to Borrower in the operation of Borrower's business and the ownership of Borrower's assets, and all material agreements to which Borrower is subject.

4.2     Borrower further covenants and agrees to:

4.2.1   Promptly notify Lender of any condition or event which constitutes, or would constitute with the passage of time or giving of notice or both, an Event of Default under this Agreement or any Loan Document and promptly inform Lender of any events or change in the financial condition of Borrower occurring since the date of the last financial statement of Borrower delivered to Lender, which individually or cumulatively, when viewed in light of prior financial statements, could result in a material adverse change in the business, properties, prospects, operation or condition (financial or otherwise) of Borrower;

4.2.2   Intentionally omitted

4.2.3   Pay or deposit promptly when due all sales, use, excise, personal property, income, withholding, corporate, franchise and other taxes, assessments and governmental charges and, when requested by Lender, submit to Lender proof satisfactory to Lender that such payments and/or deposits have been made;

4.2.4   Maintain casualty insurance coverage (naming Lender as an additional insured, loss payee and/or mortgagee as applicable) with an insurance company on the Collateral in such amounts and of such types as may be requested by Lender, and in any event, as are ordinarily carried by similar businesses; and, in the case of all policies insuring property in which Lender shall have a Security Interest of any kind whatsoever, all such insurance policies shall provide that the proceeds thereof shall be payable

to Borrower and Lender, as their respective interests may appear. Borrower shall produce proof of payment of premiums for said insurance policies as Lender may reasonably request. All said policies or certificates thereof, including all endorsements thereof and those required hereunder, shall be deposited with Lender; and such policies shall contain provisions that no such insurance may be canceled or decreased or amended without Lender's approval. If Borrower shall at any time or times hereafter fail to obtain and/or maintain any of the policies of insurance required herein, or fail to pay any premium in whole or in part relating to any such policies, Lender shall be notified within thirty (30) days of any such failure to obtain and/or maintain said policies of insurance or the failure to pay any premium when due, the Lender may, but shall not be obliged to, obtain and/or cause to be maintained insurance coverage with respect to the Collateral, including, at Lender's option, the coverage provided by all or any of the policies of Borrower and pay all or any part of the premium therefore, without waiving any Event of Default by Borrower, and any sums, including reasonable attorney fees, court costs, expenses and other charges related thereto, so disbursed by Lender shall be payable, on demand, by Borrower to Lender and shall be an additional Obligation;

4.2.5   Notify Lender in writing within ten (10) days, of any claim, litigation, action or proceeding filed or commenced by or against Borrower that could result in a material adverse change in the business, properties, prospects, operation or condition (financial or otherwise) of Borrower;

4.2.6   Permit Lender, at Borrower's expense, through Lender's authorized attorneys, accountants or representatives, to inspect the Collateral and inspect, examine and audit the books, accounts, records, ledgers and assets of every kind and description of Borrower with respect thereto at reasonable times; and

4.2.7   At any time and from time to time upon request of Lender, execute and deliver to Lender, in form and substance satisfactory to Lender, such documents as Lender shall deem necessary or desirable to perfect or maintain perfected the Security Interest of Lender in the Collateral or which may be necessary to comply with the provisions of the laws of the Commonwealth of Pennsylvania or the laws of any other jurisdiction in which Borrower may then be conducting business or in which any of the Collateral may be located.

## 5.   FINANCIAL COVENANTS.

5.1   Borrower covenants and agrees that so long as any Obligations shall remain outstanding, Borrower shall not incur any indebtedness from any source other than Lender, except normal trade debts and accruals in the ordinary course of business.

## 6.    EVENTS OF DEFAULT AND ACCELERATION.

6.1    The occurrence of any one or more of the following events shall constitute an Event of Default hereunder:

6.1.1    Failure to pay any principal, interest or any of the Obligations as and when due;

6.1.2    Failure to perform or observe any covenant, term or agreement herein set forth or set forth in any Loan Document, other than a default due to non-payment, as set forth in subparagraph 6.1.1 above, within ten (10) days after written notice from Lender of such non-compliance (unless the same cannot reasonably be cured within such ten (10) day period but the Borrower undertakes within such ten (10) day period and thereafter diligently pursues the curing of such non-compliance, then the period within which the Borrower shall cure such non-compliance shall be extended to thirty (30) days after the original written notice from the Lender of such non-compliance);

6.1.3    Any representation or warranty made or deemed made by the Borrower herein or in any Loan Document or which is contained in any certificate, document, opinion or other statement furnished now or at any time shall prove to be incorrect in any material respect on or as of the date made or deemed to be made;

6.1.4    Failure to pay or perform any Obligation of any Borrower to Lender, whether by maturity or acceleration, set forth herein or in any Loan Document;

6.1.5    Death of any Borrower;

6.1.6    A proceeding being filed or commenced against Borrower for dissolution or liquidation; or any Borrower voluntarily or involuntarily terminating or dissolving or being terminated or dissolved; insolvency of Borrower, or Borrower fails to pay its debts as they become due in the ordinary course of business; or a creditor's committee is appointed for the business of the Borrower, or Borrower makes an assignment for the benefit of creditors, or a petition in bankruptcy or for reorganization or to effect a plan of arrangement with creditors if filed by the Borrower; or Borrower applies for or permits the appointment of a receiver or trustee for any or all of its property, assets or rights, or any such receiver or trustee shall have been appointed for any or all of its property, assets or rights; or any of the above actions or proceedings whatsoever are commenced by or against any other party liable for the Obligations;

6.1.7    Any attachments, liens or additional Security Interests being placed upon any of the Collateral;

6.1.8    Acquisition at any time or from time to time of title to the whole or any part of the Collateral by any person, partnership or corporation other than Borrower;

6.1.9    Any final judgment, order or decree rendered against Borrower exceeding $25,000 and remaining undischarged, unstayed or outstanding against Borrower for a period of thirty (30) days;

6.1.10    Any investigation undertaken by any governmental entity or if any indictment, charge or proceeding is filed or commenced, whether criminal or civil, pursuant to Federal or state law against Borrower for which forfeiture of any of the property or assets of Borrower is a penalty;

6.1.11    Any Reportable Event occurs or if any Employee Benefit Plan is terminated or Lender reasonably believes that such plan may be terminated pursuant to and as defined in the Employee Retirement Income Security Act of 1974, as amended; or

6.1.12    Lender reasonably deems itself insecure; the occurrence of a material adverse change in the business, properties, prospects, operation or condition (financial or otherwise) of Borrower; or a material adverse occurrence.

6.2    If any Event of Default shall occur, then or at any time thereafter, while such Event of Default shall continue, Lender may declare all Obligations to be due and payable, without notice, protest, presentment, dishonor or demand, all of which are hereby expressly waived by Borrower.

## 7.    RIGHTS AND REMEDIES.

Lender shall have the following rights and remedies at any time following the occurrence of an Event of Default:

7.1    Lender, and any officer or agent of Lender, is hereby constituted and appointed as true and lawful attorney-in-fact of Borrower with power:

7.1.1    To endorse the name of Borrower upon any instrument of payment (including payments made under any policy of insurance) that may come into possession of Lender in full or in part payment of any Obligation;

7.1.2    To sign and endorse the name of Borrower upon any invoice, freight or express bill, bill of lading, storage or warehouse receipt, drafts against account debtors or other obligors;

7.1.3    To notify the post office authorities to change the address for delivery mail of Borrower to an address designated by Lender and to receive, open and dispose of all mail addressed to Borrower;

7.1.4    To sign the name of Borrower upon any Local, State or Federal agency information release form including, but not limited to, Tax Information Authorization Form 8821 of the Internal Revenue Service.

7.1.5    To sell, assign, sue for, collect or compromise payment of all or any part of the Collateral in the name of Borrower, or in its own name, or make any other disposition of Collateral, or any part thereof, which disposition may be for cash, credit or any combination thereof, and Lender may purchase all or any part of the Collateral at public or, if permitted by law, private sale, and in lieu of actual payment of such purchase price, may setoff the amount of such price against the Obligations;

7.1.6    Granting to Lender, as the attorney-in-fact of Borrower, full power of substitution and full power to do any and all things necessary to exercise its rights and remedies as fully and effectually as Borrower might or could do but for this appointment, and hereby ratifying all that said attorney-in-fact shall lawfully do or cause to be done by virtue hereof. Neither Lender nor its agents shall be liable for any acts or omissions or for any error of judgment or mistake of fact or law in its capacity as such attorney-in-fact. This power of attorney is coupled with an interest and shall be irrevocable so long as any Obligations shall remain outstanding; and

7.1.7    To appraise or reappraise any property, assets or rights of Borrower, at Borrower's expense, in any Federally regulated transaction as defined under Title XI of the Financial Institution, Reform, Recovery and Enforcement Act of 1989 and such expense (whether or not such appraiser is a salaried employee of Lender) shall be part of the Obligations payable on demand.

Borrower acknowledges and agrees that (a) any powers granted to Lender hereunder are granted in connection with a commercial transaction, (b) Lender's exercise of any such powers would be in accordance with Borrower's reasonable expectations, and (c) Lender does not and shall not have any of the duties to Borrower set forth in 20 Pa.C.S.A. §5601.3(b), and the same are hereby irrevocably waived by Borrower.

7.2    Lender shall have, in addition to any other rights and remedies contained herein, and any Loan Document, all of the rights and remedies of a secured party under the Uniform Commercial Code in force in the Commonwealth of Pennsylvania, as of the Date of Agreement, and all rights and remedies available at law or in equity, all of which rights and remedies shall be cumulative, and nonexclusive, to the extent permitted by law.

7.3    Any notice required to be given by Lender of a sale or other disposition of the Collateral or other intended action by Lender made in accordance with the terms herein or any Loan Document at least ten (10) days prior to such proposed action, shall constitute fair and reasonable notice to Borrower of any such action. In the

event that any of the Collateral is used in conjunction with any real estate, the sale of the Collateral in conjunction with and as one parcel with any such real estate of Borrower, shall be deemed to be a commercially reasonable manner of sale. The net proceeds realized by Lender upon any such sale or other disposition, after deduction of the expenses of retaking, holding, preparing for sale, selling or the like and reasonable attorneys' fees and any other expenses incurred by Lender, shall be applied toward satisfaction of the Obligations hereunder. Lender shall account to Borrower for any surplus realized upon such sale or other disposition and Borrower shall remain liable for any deficiency. The commencement of any action, legal or equitable, shall not affect the Security Interest of Lender in the Collateral until the Obligations hereunder or any judgment therefor are fully paid.

7.4    If at any time Lender determines that any applicable law, regulation, condition or directive, or the interpretation of any thereof, relating to capital adequacy (including, but not limited to, any request, guideline or policy, whether or not having the force of law, and including, but not limited to, any regulation promulgated by the Board of Governors of the Federal Reserve System as now or from time to time hereafter in effect) by any authority charged with the administration or interpretation thereof, or any change in any of the foregoing, has or would have the effect of reducing the rate of return on Lender's capital as a consequence of Lender's obligations under this Agreement to a level below that which Lender would have achieved but for such law, regulation, condition, directive, interpretation or change (taking into consideration Lender's policies with respect to capital adequacy) by an amount deemed by Lender to be material, then from time to time Borrower shall pay to Lender on demand such additional amount(s) as will compensate Lender for such reduction.

7.4.1    Lender will promptly notify Borrower of any event of which it has knowledge occurring after the date hereof, which will entitle Lender to compensation pursuant to Section 7.4. A certificate or notice from Lender claiming right of compensation under Section 7.4 and setting forth the additional amount(s) to be paid to it hereunder shall be conclusive in the absence of manifest error. In determining such amount, Lender may use any reasonable averaging and attribution methods.

7.4.2    Borrower's failure to pay such additional amount(s) shall result in Borrower becoming liable for the difference between the actual return achieved and what Lender had expected to achieve and shall become a part of Borrower's Obligations herein secured by the Collateral.

8.    **GENERAL PROVISIONS.**

8.1    The failure of Lender at any time or times hereafter to require strict performance by Borrower of any of the provisions, warranties, terms and conditions contained herein or in any Loan Document shall not waive, affect or diminish any right of Lender at any time or times thereafter to demand strict performance thereof; and, no rights of Lender hereunder or in any Loan Document shall be deemed to have

been waived by any act or knowledge of Lender, its agents, officers or employees, unless such waiver is contained in an instrument in writing signed by an officer of Lender and directed to Borrower specifying such waiver. No waiver by Lender of any of its rights shall operate as a waiver of any other of its rights or any of its rights on a future occasion.

8.2     Any demand or notice required or permitted to be given hereunder or in any Loan Document shall be deemed effective when deposited in the United States mail, and sent by certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address as may be provided by the party to be notified, on ten (10) days prior written notice to the other party:

| | |
|---|---|
| If to Borrower: | Ashraful M. Islam and Dilruba A. Islam<br>1611 Clearview Road<br>Lansdale, PA 19446 |
| Copy to: | **Waived** |
| If to Lender: | Excel Financial Corp.<br>455 Pennsylvania Avenue, Suite 2LF<br>Fort Washington, PA 19034<br>Attn:   Richard Frankel, President |
| Copy to: | Friedman, Schuman, Applebaum<br>   & Nemeroff, P.C.<br>101 Greenwood Avenue, Fifth Floor<br>Jenkintown, PA  19046<br>Attn:   Kerry S. Schuman, Esquire |

8.3     Any notice required to be given by Lender made in accordance with the terms herein or any Loan Document, shall constitute fair and reasonable notice to Borrower of any such action.

8.4     This Agreement and the Loan Documents contain the entire understanding between the parties hereto with respect to the transactions contemplated herein and such understanding shall not be modified except in writing signed by or on behalf of the parties hereto.

8.5     Borrower shall not hold Lender liable due to any action or failure to act by Lender herein or under any Loan Document except as a result of Lender's gross negligence or willful misconduct. This provision shall survive the termination or expiration of this Agreement or any Loan Document.

8.6    Wherever possible, each provision herein or in any Loan Document shall be interpreted in such manner as to be effective and valid under applicable law; should any portion of this Agreement or any Loan Document be declared invalid for any reason in any jurisdiction, such declaration shall have no effect upon the remaining portions of this Agreement or any Loan Document, furthermore, the entirety of this Agreement or any Loan Document shall continue in full force and effect in all other jurisdictions and said remaining portions herein or in any Loan Document shall continue in full force and effect in the subject jurisdiction as if this Agreement or any Loan Document had been executed with the invalid portions thereof deleted.

8.7    In the event Lender seeks to take possession of any or all of the Collateral by court process, Borrower hereby irrevocably waives any bonds and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession and waives any demand for possession prior to the commencement of any suit or action to recover.

8.8    The provisions of this Agreement or any Loan Document shall be binding upon and shall inure to the benefit of the heirs, personal representatives, administrators, successors and assigns of Lender and Borrower; provided, however, Borrower may not assign any of its rights or delegate any of its Obligations hereunder or in any Loan Document without the prior written consent of Lender.

8.9    This Agreement or any Loan Document is and shall be deemed to be a contract entered into and made pursuant to the laws of the Commonwealth of Pennsylvania and shall, in all respects, be governed, construed, applied and enforced in accordance with such laws.

8.10   If, prior hereto and/or at any time or times hereafter, Lender shall employ counsel in connection with the execution and consummation of the transactions contemplated herein or in any Loan Document or to commence, defend or intervene, file a petition, complaint, answer, motion or other pleadings, or to take any other action in or with respect to any suit or proceeding (bankruptcy or otherwise) relating to this Agreement or any Loan Document, or to enforce any rights of Lender hereunder, or in any Loan Document, whether before or after the occurrence of any Event of Default, or to collect any of the Obligations then, in any of such events, Borrower agrees to pay reasonable attorneys' fees (whether or not such attorney is a regularly salaried employee of Lender), and any expenses, costs and charges relating thereto, and such shall be part of the obligations payable on demand and secured by the Collateral.

8.11   With respect to all or any part of the Obligations, in the event that the Lender seeks to enter into a participation, inter-creditor and/or assignment agreement, then Borrower hereby authorizes Lender to release all or part of any financial or credit information provided by Borrower to Lender to any other bank or financial institution without notice.

8.12    Each reference herein or in any Loan Document to Lender shall be deemed to include its successors and assigns, and each reference to Borrower and any pronouns referring thereto as used herein shall be construed in the masculine, feminine, neuter, singular or plural as the context may require, and shall be deemed to include heirs, personal representatives, administrators, successors and assigns of Borrower, all of whom shall be bound by the provisions hereof or in any Loan Document.   The term "Borrower" as used herein shall, if this Agreement or any Loan Document is signed by more than one Borrower, mean, unless this Agreement or any Loan Document otherwise provides or unless the context otherwise requires, the "Borrower" and each of them and each and every representation, promise, agreement and undertaking shall be joint and several, except that the granting of the Security Interest, right of setoff and lien shall be by each Borrower in its several respective properties.

8.13    The section headings herein are included for convenience only and shall not be deemed to be a part of this Agreement or any Loan Document.

8.14    This Agreement and the Loan Documents are intended to take effect as instruments under seal.

## 9.    ASSIGNMENT BY LENDER.

Lender may, from time to time, without notice to the Borrower, sell, assign, transfer or otherwise dispose of all or any part of the Obligations and/or the Collateral therefore.  In such event, each and every immediate and successive purchaser, assignee, transferee or holder of all or any part of the Obligations and/or the Collateral shall have the right to enforce this Agreement, by legal action or otherwise, for its own benefit as fully as if such purchaser, assignee, transferee or holder were herein by name specifically given such rights.  Lender shall have an unimpaired right to enforce this Agreement for its benefit to that portion of the Obligations as Lender has not sold, assigned, transferred or otherwise disposed of.

## 10.    WAIVER OF JURY TRIAL.

**BORROWER WAIVES TRIAL BY JURY AND CONSENTS TO AND CONFERS PERSONAL JURISDICTION ON COURTS OF THE COMMONWEALTH OF PENNSYLVANIA OR OF THE FEDERAL GOVERNMENT LOCATED IN THE COMMONWEALTH OF PENNSYLVANIA, AND EXPRESSLY WAIVES ANY OBJECTIONS AS TO VENUE IN ANY OF SUCH COURTS, AND AGREES THAT SERVICE OF PROCESS MAY BE MADE ON BORROWER BY MAILING A COPY OF THE SUMMONS TO BORROWER AT BORROWER'S ADDRESS, LENDER LIKEWISE WAIVES TRIAL BY JURY.**

## 11.    WARRANT OF ATTORNEY FOR CONFESSION OF JUDGMENT.

**BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF RECORD, OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, TO APPEAR FOR BORROWER AT ANY TIME OR TIMES, AFTER THE OCCURRENCE**

OF AN EVENT OF DEFAULT AND EXPIRATION OF ANY APPLICABLE CURE PERIODS WITH RESPECT THERETO UNDER ANY OF THE LOAN DOCUMENTS, IN ANY SUCH COURT IN ANY ACTION BROUGHT AGAINST BORROWER BY LENDER WITH RESPECT TO THE AGGREGATE AMOUNTS PAYABLE UNDER THE LOAN DOCUMENTS, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR ALL SUMS PAYABLE BY BORROWER TO LENDER UNDER THE LOAN DOCUMENTS, AS EVIDENCED BY AN AFFIDAVIT SIGNED BY A DULY AUTHORIZED DESIGNEE OF LENDER SETTING FORTH SUCH AMOUNT THEN DUE FROM BORROWER TO LENDER, WITH COSTS OF SUIT, PLUS ATTORNEY'S COMMISSION EQUAL TO FIFTEEN (15%) PERCENT OF THE AGGREGATE OF SUCH SUMS, AND BORROWER ACKNOWLEDGES THAT ATTORNEYS' FEES ARE STATED TO BE FIFTEEN (15%) PERCENT SOLELY FOR PURPOSES OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION AND AGREES THAT IN ENFORCING ANY SUCH JUDGMENT, LENDER SHALL NOT DEMAND, SOLELY WITH RESPECT TO ATTORNEY'S FEES INCURRED BY LENDER IN CONNECTION WITH SUCH INDEBTEDNESS AFTER SUCH JUDGMENT IS RENDERED, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF REASONABLE ATTORNEYS' FEES CHARGED OR BILLED TO LENDER (WHICH ATTORNEYS' FEES SHALL BE CHARGED OR BILLED TO THE LENDER AT THE STANDARD HOURLY RATES),  WITH RELEASE OF PROCEDURAL ERRORS AND WITHOUT RIGHT OF APPEAL. IF A COPY OF THIS LOAN AGREEMENT, VERIFIED BY AN AFFIDAVIT SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. BORROWER WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT.  NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO BRING ANY ACTION OR CONFESS JUDGMENT THEREIN SHALL BE DEEMED TO EXHAUST THE POWER, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS LENDER SHALL ELECT UNTIL ALL AMOUNTS PAYABLE TO LENDER UNDER THE LOAN DOCUMENTS SHALL HAVE BEEN PAID IN FULL.

BORROWER ACKNOWLEDGES AND AGREES THAT (A) THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT IS BEING EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION, (B) LENDER'S CONFESSION OF JUDGMENT FOLLOWING AN EVENT OF DEFAULT AND IN ACCORDANCE WITH THE FOREGOING WARRANT OF ATTORNEY WOULD BE IN ACCORDANCE WITH BORROWER'S REASONABLE EXPECTATIONS, AND (C) LENDER DOES NOT AND, IN REGARDS TO THE LOAN OR THE LOAN DOCUMENTS, SHALL NOT HAVE ANY OF THE DUTIES TO BORROWER SET FORTH IN 20 PA.C.S.A. §5601.3(B), AND THE SAME ARE HEREBY IRREVOCABLY WAIVED BY BORROWER.

12.   DAMAGES.

BORROWER AGREES THAT IN ANY ACTION, SUIT OR PROCEEDING, AND IN RESPECT OF OR ARISING OUT OF ANY LOAN DOCUMENT, BORROWER WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW, ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.

13.   WAIVER OF AUTOMATIC STAY.

IN THE EVENT THAT A PROCEEDING UNDER ANY BANKRUPTCY OR INSOLVENCY LAW IS COMMENCED BY OR AGAINST BORROWER AND AN ORDER FOR RELIEF IS ENTERED AS A RESULT OF SUCH PETITION, BORROWER HEREBY CONSENTS TO RELIEF FROM THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. §362 TO ALLOW LENDER TO EXERCISE ITS RIGHTS AND REMEDIES HEREUNDER WITH RESPECT TO THE COLLATERAL.

14.   REPRESENTATION BY COUNSEL.

BORROWER ACKNOWLEDGES THAT BORROWER HAS BEEN ADVISED OF ITS RIGHT TO BE REPRESENTED BY COUNSEL OF BORROWER'S OWN CHOICE AND KNOWINGLY AND VOLUNTARILY GRANTED TO LENDER THE RIGHTS SET FORTH HEREIN, INCLUDING, BUT NOT LIMITED TO, THE RIGHTS SET FORTH IN PARAGRAPHS 10, 11, 12 AND 13 HEREOF.

15.   ANTI-MONEY LAUNDERING AND INTERNATIONAL TRADE CONTROLS.

15.1   Borrower represents, warrants and covenants to Lender that:

15.1.1  it is not now nor shall it be at any time until after the Loan is fully repaid a Person with whom a U.S. Person, including a Financial Institution, is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under U.S. law, regulation, executive orders and lists published by the OFAC (including those executive orders and lists published by OFAC with respect to Specially Designated Nationals and Blocked Persons) or otherwise.

15.1.2  No Borrower and no Person who owns a direct interest in Borrower is now nor shall be at any time until after the Loan is fully repaid a Person with whom a U.S. Person, including a Financial Institution, is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under U.S. law, regulation, executive orders and lists published by the OFAC (including those executive orders and lists published by OFAC with respect to Specially Designated Nationals and Blocked Persons) or otherwise.

15.2   Borrower represents, warrants and covenants to Lender that it has taken, and shall continue to take until after the Loan is fully repaid, such measures as are required by law to assure that the funds invested in Borrower and/or used to make

payments on the Loan are derived (a) from transactions that do not violate U.S. law nor, to the extent such funds originate outside the United States, do not violate the laws of the jurisdiction in which they originated; and (b) from permissible sources under U.S. law and to the extent such funds originate outside the United States, under the laws of the jurisdiction in which they originated.

15.3    Borrower further represents, warrants and covenants to Lender that, to the best of its knowledge after making due inquiry, neither Borrower, nor any holder of a direct interest in Borrower, nor any Person providing funds to Borrower (a) is under investigation by any governmental authority for, or has been charged with, or convicted of, money laundering, drug trafficking, terrorist-related activities, any crimes which in the United States would be predicate crimes to money laundering, or any violation of any Anti-Money Laundering Laws; (b) has been assessed civil or criminal penalties under any Anti-Money Laundering Laws; and (c) has had any of its funds seized or forfeited in any action under any Anti-Money Laundering Laws.

15.4    Borrower represents and warrants that it is in compliance with any and all applicable provisions of the Patriot Act.

15.5    After the Closing Date, Borrower agrees to cooperate with Lender, and to cause any third parties to cooperate with Lender, in providing such additional information and documentation on Borrower's legal or beneficial ownership, policies, procedures and sources of funds as Lender deems necessary or prudent to enable Lender to comply with Anti-Money Laundering Laws as now in existence or hereafter amended. From time to time upon the written request of Lender, Borrower shall deliver to Lender a schedule of the name, legal domicile address and jurisdiction of organization, if applicable, for each Borrower Party and each holder of a legal interest in Borrower.

15.6    If (1) Borrower shall fail to comply with any of the provisions of this Section, or (2) any representation, warranty or covenant of Borrower under this Section, shall be false, misleading or incorrect as of the date made, then Lender, in addition to all of its other rights and remedies hereunder, may declare that an Event of Default exists under this Agreement. Borrower shall notify Lender promptly of any change in facts or circumstances that causes any of the representations, warranties or covenants in this Article 15 to be untrue.

15.7    Borrower further represents, warrants and covenants that all evidence of Borrower's identity provided to Lender is genuine, that all related information is accurate and that Borrower has acquired and shall hold its interest in the Collateral for its own account, risk and beneficial interest, without the obligation or intention to sell, distribute, assign or transfer all or any portion of such interest to any other Person.

15.8    If Lender reasonably believes that Borrower may have breached any of its representations, warranties or covenants set forth in this Section, Lender has the

right (and may have the obligation under applicable law), with or without notice to Borrower, to (1) notify the appropriate governmental authority (or authorities) and to take such action as such governmental authority (or authorities) may direct; (2) withhold Loan advances and segregate the assets constituting the Loan or any of Borrower's funds or assets deposited with or otherwise controlled by Lender pursuant to the Loan Documents; (3) decline any payment (or deposit such payment with an appropriate United States governmental authority or court) or decline any prepayment or consent request, and/or declare an Event of Default and immediately accelerate the Loan.  Borrower agrees that it shall not assert any claim (and hereby waives any claim that it may now or hereafter have) against Lender or any of its affiliates or agents for any form of damages as a result of any of the foregoing actions, regardless of whether Lender's reasonable belief is ultimately demonstrated to be accurate, excepting, however, Lender's gross negligence or willful misconduct.

**IN WITNESS WHEREOF** and intending to be legally bound hereby, the parties hereto have caused this Agreement to be executed on the date first written above.

**BORROWER:**

| | |
|---|---|
| _____ | _____ |
| Witness | **Ashraful Islam** |
| | (SEAL) |
| _____ | _____ |
| Witness | **Dilruba Islam** |
| | (SEAL) |

**LENDER:**

**EXCEL FINANCIAL CORP.**

_____                    By: _____
Witness                                          Richard Frankel, President

[Signature Page to Loan Agreement]

## ACKNOWLEDGMENTS

COMMONWEALTH OF PENNSYLVANIA    :
    :
COUNTY OF MONTGOMERY    :

    On this, the 19th day of September, 2017, before me, the undersigned officer, personally appeared **ASHRAFUL ISLAM and DILRUBA ISLAM**, known to be or satisfactorily proven to be the persons whose names are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Michael Jay Higgins, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Oct. 9, 2017

# EXHIBIT "B"

## MORTGAGE NOTE

$ 160,000.00                                          September 19th, 2017

FOR VALUE RECEIVED, **ASHRAFUL ISLAM and DILRUBA ISLAM**, adult individuals (the "Borrower"), with an address at 1611 Clearview Road, Lansdale, PA 19446, promise to pay to the order of **EXCEL FINANCIAL CORP.**, with an office at 455 Pennsylvania Avenue, Suite 2LF, Fort Washington, PA 19034 ("Lender"), at such office of Lender or at such other place as Lender may designate from time to time in writing, the principal sum of One Hundred Sixty Thousand Dollars, lawful money of the United States of America, or, if less, the outstanding principal balance on all loans and advances made by Lender hereunder, together with interest thereon from the date of each advance at the rates hereinafter provided, and both payable as hereinafter provided.

1. **Interest.**

(a)     The principal sum outstanding from time to time hereunder shall bear interest at a floating rate equal to the "Wall Street Prime Rate" (as hereinafter defined) plus seven (7%) percent per annum. Notwithstanding the foregoing, the minimum rate of interest shall be eleven and one quarter (11.25%) percent per annum.

(b)     For purposes of this Note, the "Wall Street Prime Rate" shall mean the prime rate published in the "Money Rates" section of The Wall Street Journal, or its successor or the highest prime rate if more than one is published, as such rate may change from time to time. The interest rate hereunder shall change automatically as of the effective date of each change in the Wall Street Prime Rate. When the interest rate changes on a day other than the first day of a calendar month, interest for the month in which such change or changes are made shall be calculated on a per diem basis with the various interest rates in effect for that month.

(c)     Notwithstanding anything to the contrary contained herein, the effective rate of interest hereunder shall not exceed the maximum effective rate of interest permitted by applicable law or regulation. Borrower hereby agrees to give Lender written notice in the event

Borrower has actual knowledge that any interest payment made to Lender with respect to this Note will cause the total interest payments collected in any one year to be usurious under applicable law, and Lender hereby agrees not to collect knowingly any interest from Borrower in the form of fees or otherwise which will render the Loan usurious. In the event that such interest would be usurious in Lender's opinion, Lender reserves the right to reduce the interest payable by Borrower. This provision shall survive the repayment of this Note.

(d)    The annual interest rate shall be calculated on the basis of 360 day years and the actual number of days elapsed.

2.    **Payments of Principal and Interest.**

(a)    At the closing of the Loan evidenced hereunder, Borrower shall pay interest on the outstanding principal balance from the date hereof to October 1, 2017.

(b)    Commencing on November 1, 2017, and continuing on the first day of each successive calendar month, Borrower shall make monthly installments of interest as accrued on the unpaid principal balance due hereunder, calculated in accordance with the provisions of paragraph 1(a) above.

(c)    Unless due earlier by virtue of an Event of Default, the entire unpaid principal sum then outstanding, together with all accrued and unpaid interest and other charges, shall become due and payable, without further demand on the third year anniversary date of this Note ("Maturity Date").

(d)    In the event the Loan evidenced hereunder is not paid in full on or before the Maturity Date, Borrower shall pay an additional fee in the amount of five (5%) percent of the then outstanding balance of the Loan, which fee shall be due and payable on the first business day immediately following the Maturity Date. The amount of any such fee not paid when due shall be deemed outstanding and payable pursuant to this Note.

3.    **Prepayments.**    Borrower may make a prepayment at any time without the imposition of penalty or premium. Any prepayment shall be applied first to any accrued and

unpaid interest hereunder to the date of such prepayment, then to any other sums which may be payable to Lender under the Loan Documents (as hereinafter defined) up to the date of such prepayment and then to the principal sum hereunder. The acceptance of any such prepayment when there is an Event of Default in existence hereunder shall not constitute a waiver, release or accord and satisfaction thereof or of any rights with respect thereto by Lender.

4.    **Collateral and Loan Documents.**  This Note, and the due performance by Borrower of all of its obligations hereunder, is evidenced and secured by: (a) an Open-End Mortgage and Security Agreement, (b) a Loan Agreement,  and (c) all collateral documents pursuant thereto or hereto, including, but not limited to, instruments of pledge, mortgage, assignment, transfer or delivery, as well as any and all related agreements, instruments and public filings which are referred to collectively as the "Loan Documents".  Any collateral securing any of Borrower's obligations under any of the Loan Documents are hereinafter referred to collectively as the "Collateral".

5.    **Late Charge.**  In the event that any payment of principal or interest due to Lender hereunder shall not be paid within ten (10) calendar days after the due date or if any check is returned, in addition to and not in limitation of any other rights or remedies which Lender may have in respect thereof under any of the Loan Documents or in respect of any Collateral, Borrower shall pay Lender on demand a "late charge" computed at the rate of five cents ($.05) for each dollar (or part thereof) of the amount not paid, to cover the extra expense and inconvenience to Lender ensuring payment of such delinquent amount.  Borrower acknowledges that its failure to pay any amount due hereunder promptly within ten (10) calendar days when due will result in Lender incurring additional expense in servicing the loan evidenced by this Note, the loss of the use of the money due and frustration to Lender in meeting their loan commitments, that the damages to Lender in connection with such late payment are extremely difficult and impractical to ascertain, and that a sum equal to five cents ($.05) for each dollar which is not paid when due is a reasonable estimate of the damages incurred by Lender in

connection with any such late payment. The amount of any such "late charge" not paid promptly following demand therefor shall be deemed outstanding and payable pursuant to this Note.

6.    **Events of Default.** The occurrence of any one or more of the Events of Default set forth in the Loan Agreement subject to the expiration of any applicable notice and cure period, shall constitute an Event of Default hereunder.

7.    **Remedies.** Upon the occurrence of any Event of Default following the expiration of any applicable notice and cure period, the entire unpaid principal sum hereunder plus all interest accrued thereon plus all other sums due and payable to Lender under the Loan Documents shall, at the option of Lender, become due and payable immediately without presentment, demand, notice of nonpayment, protest, notice of protest or other notice of dishonor, all of which are hereby expressly waived by Borrower unless and except to the extent any such notice is specifically provided for herein.

In addition to the foregoing, upon the occurrence of any Event of Default, Lender may forthwith exercise singly, concurrently, successively or otherwise any and all rights and remedies available to Lender under any of the Loan Documents or with respect to any Collateral, or available to Lender by law, equity, statute or otherwise.

8.    **Remedies Cumulative, etc.**

(a)    No right or remedy conferred upon or reserved to Lender under any of the Loan Documents, or with respect to any Collateral, now or hereafter existing at law or in equity or by statute or other legislative enactment, is intended to be exclusive of any other right or remedy, and each and every such right or remedy shall be cumulative and concurrent, and shall be in addition to every other such right or remedy, and may be pursued singly, concurrently, successively or otherwise, at the sole discretion of Lender, and shall not be exhausted by any one exercise thereof but may be exercised as often as occasion therefore shall occur. No act of Lender shall be deemed or construed as an election to proceed under any one such right or remedy to the exclusion of any other such right or remedy; furthermore, each such right or

remedy of Lender shall be separate, distinct and cumulative and none shall be given effect to the exclusion of any other. The failure to exercise or delay in exercising any such right or remedy, or the failure to insist upon strict performance of any term of any of the Loan Documents, shall not be construed as a waiver or release of the same, or of any Event of Default thereunder, or of any obligation or liability of Borrower thereunder.

(b)    The recovery of any judgment by Lender and/or the levy of execution under any judgment upon any Collateral shall not affect in any manner or to any extent the security interest under the Security Agreement/Loan Documents *(use Loan Documents if no Security Agreement)* in such Collateral, or any rights, remedies or powers of Lender under any of the Loan Documents or with respect to any Collateral, but such lien and such security interest, and such rights, remedies and power of Lender shall continue unimpaired as before. Further, the exercise by Lender of its rights and remedies and the entry of any judgment by Lender shall not affect in any way the interest rate payable hereunder or under any of the other Loan Documents or any amounts due to Lender but interest shall continue to accrue on such amounts at the Default Rate (as hereinafter defined).

(c)    Unless and except to the extent notice is specifically provided for herein, Borrower hereby waives presentment, demand, notice of nonpayment, protest, notice of protest or other notice of dishonor, and any and all other notices in connection with any default in the payment of, or any enforcement of the payment of, all amounts due under the Loan Documents. To the extent permitted by law, Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. Borrower further waives and releases all procedural errors, defects and imperfections in any proceedings instituted by Lender under the terms of any Loan Document or with respect to any Collateral.

(d)    Borrower agrees that Lender may release, compromise, forbear with respect to, waive, suspend, extend or renew any of the terms of the Loan Documents (and Borrower hereby waives any notice of any of the foregoing), and that the Loan Documents may

be amended, supplemented or modified by Lender and the other signatory parties and that Lender may resort to any Collateral in such order and manner as it may think fit, or accept the assignment, substitution, exchange, pledge, or release of all or any portion of any Collateral, for such consideration, or none, as it may require, without in any way affecting the validity of any liens over or other security interest in the remainder of any such Collateral (or the priority thereof or the position of any subordinate holder of any lien or other security interest with respect thereto); and any action taken by Lender pursuant to the foregoing shall in no way be construed as a waiver or release of any right or remedy of Lender, or of any Event of Default, or of any liability or obligation of the Borrower, under any of the Loan Documents.

(e)     Borrower agrees that any action or proceeding against it to enforce this Note may be commenced in state or federal court or in any county in the Commonwealth of Pennsylvania in which Lender or subsequent note holder has an office, and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served if served by registered or certified mail in accordance with the notice provisions set forth herein and Borrower expressly waives any and all defenses to an exercise of personal jurisdiction by any such court.

9.    **Default Rate.** Following the occurrence of any event of default and continuing either until such event of default is cured and that fact acknowledged by the Lender or until the principal sum then outstanding hereunder and all other sums payable under the Loan Documents are paid in full, the principal sum outstanding hereunder shall bear interest at the interest rate calculated as set forth in accordance with Paragraph 1(a) hereof plus five (5%) percent per annum ("Default Rate") and shall be secured by the Collateral.  Borrower acknowledges that: (i) such additional rate is a material inducement to Lender to make the Loan; (ii) Lender would not have made the Loan in the absence of the agreement of the Borrower to pay such additional rate; (iii) such additional rate represents compensation for increased risk to Lender that the Loan will not be repaid; and (iv) such rate is not a penalty and represents a reasonable estimate of (a) the

cost to Lender in allocating its resources (both personnel and financial) to the on-going review, monitoring, administration and collection of the Loan and (b) compensation to Lender for losses that are difficult to ascertain.

10.    **Costs and Expenses.**  Borrower shall pay upon demand all reasonable costs and expenses (including all reasonable amounts paid to attorneys, accountants, real estate brokers and other advisors employed by Lender) incurred by Lender in the exercise of any of its rights, remedies or powers under any of the Loan Documents or with respect to any Collateral with respect to such Event of Default (including, but not limited to, such sums incurred by Lender after Borrower has filed a Petition in Bankruptcy), and any amount thereof not paid promptly following demand therefor shall be added to the principal sum hereunder and shall bear interest at the Default Rate from the date of such demand until paid in full, and shall be secured by the Collateral.  In connection with, and as part of the foregoing, in the event that any of the Loan Documents is placed in the hands of an attorney for the collection of any sum payable thereunder, Borrower agrees to pay reasonable attorneys' fees for the collection of the amount being claimed under the Loan Document, as well as all costs, disbursements and allowances provided by law, the payment of which sums shall be secured by the Collateral.  Attorneys' fees may be collectible from the Collateral to the extent permitted under the Bankruptcy Code (11 U.S.C. 101, et seq., as amended), or other law.  Nothing in this paragraph 10 shall limit the obligation of Borrower to pay any and all costs and expenses for which Borrower is otherwise liable under any of the Loan Documents.  Further, the exercise by Lender of its rights and remedies and the entry of any judgment by Lender shall not affect in any way the obligation of the Borrower to pay any and all costs and legal fees which may become due after the entry of any judgment.  Such costs and fees, inclusive of the costs to preserve the Collateral, shall continue to accrue after the entry of any judgment, whether by confession, default or otherwise until the Lender is paid in full.

11.    **Severability.** In the event that for any reason one or more of the provisions of this Note or their application to any person or circumstance shall be held to be invalid, illegal or unenforceable in any respect or to any extent, such provisions shall nevertheless remain valid, legal and enforceable in all such other respects and to such extent as may be permissible. In addition, any such invalidity, illegality or unenforceability shall not affect any other provisions of this Note, but this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

12.    **Successors and Assigns.** This Note inures to the benefit of Lender and binds Borrower, and their respective successors and assigns, and the words "Lender" and "Borrower" whenever occurring herein shall be deemed and construed to include such respective successors and assigns.

13.    **Notices.** All notices required to be given to any of the parties hereunder shall be given in accordance with the Loan Agreement.

14.    **Definitions; Number and Gender.** In the event Borrower consists of more than one person or entity, the obligations and liabilities hereunder of each such persons and entities shall be joint and several and the word "Borrower" shall mean all or some or any of them. For purposes of this Note, the singular shall be deemed to include the plural and the neuter shall be deemed to include the masculine and feminine, as the context may require. The references herein to the Loan Documents or any one of them shall include any supplements to or any amendments of or restatements of such Loan Documents or any one of them.

15.    **Incorporation by Reference.** All of the terms and provisions of the Loan Documents, to the extent not inconsistent herewith, are hereby incorporated herein by reference.

16.    **Captions.** The captions or headings of the paragraphs in this Note are for convenience only and shall not control or affect the meaning or construction of any of the terms or provisions of this Note.

17.    <u>Governing Law.</u> This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

18.    <u>CONFESSION OF JUDGMENT.</u> BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF RECORD, OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, TO APPEAR FOR BORROWER AT ANY TIME OR TIMES, AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT AND EXPIRATION OF ANY APPLICABLE CURE PERIODS WITH RESPECT THERETO UNDER ANY OF THE LOAN DOCUMENTS, IN ANY SUCH COURT IN ANY ACTION BROUGHT AGAINST BORROWER BY LENDER WITH RESPECT TO THE AGGREGATE AMOUNTS PAYABLE UNDER THE LOAN DOCUMENTS, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR ALL SUMS PAYABLE BY BORROWER TO LENDER UNDER THE LOAN DOCUMENTS, AS EVIDENCED BY AN AFFIDAVIT SIGNED BY A DULY AUTHORIZED DESIGNEE OF LENDER SETTING FORTH SUCH AMOUNT THEN DUE FROM BORROWER TO LENDER, WITH COSTS OF SUIT, PLUS ATTORNEY'S COMMISSION EQUAL TO FIFTEEN (15%) PERCENT OF THE AGGREGATE OF SUCH SUMS, AND BORROWER ACKNOWLEDGES THAT ATTORNEYS' FEES ARE STATED TO BE FIFTEEN (15%) PERCENT SOLELY FOR PURPOSES OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION AND AGREES THAT IN ENFORCING ANY SUCH JUDGMENT, LENDER SHALL NOT DEMAND, SOLELY WITH RESPECT TO ATTORNEY'S FEES INCURRED BY LENDER IN CONNECTION WITH SUCH INDEBTEDNESS AFTER SUCH JUDGMENT IS RENDERED, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF REASONABLE ATTORNEYS' FEES CHARGED OR BILLED TO LENDER (WHICH ATTORNEYS' FEES SHALL BE CHARGED OR BILLED TO THE LENDER AT THE

STANDARD HOURLY RATES), WITH RELEASE OF PROCEDURAL ERRORS AND WITHOUT RIGHT OF APPEAL. IF A COPY OF THIS NOTE, VERIFIED BY AN AFFIDAVIT SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. BORROWER WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO BRING ANY ACTION OR CONFESS JUDGMENT THEREIN SHALL BE DEEMED TO EXHAUST THE POWER, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS LENDER SHALL ELECT UNTIL ALL AMOUNTS PAYABLE TO LENDER UNDER THE LOAN DOCUMENTS SHALL HAVE BEEN PAID IN FULL.

BORROWER ACKNOWLEDGES AND AGREES THAT (A) THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT IS BEING EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION, (B) LENDER'S CONFESSION OF JUDGMENT FOLLOWING AN EVENT OF DEFAULT AND IN ACCORDANCE WITH THE FOREGOING WARRANT OF ATTORNEY WOULD BE IN ACCORDANCE WITH BORROWER'S REASONABLE EXPECTATIONS, AND (C) LENDER DOES NOT AND, IN REGARD TO THE LOAN OR THE LOAN DOCUMENTS, SHALL NOT HAVE ANY OF THE DUTIES TO BORROWER SET FORTH IN 20 PA.C.S.A. §5601.3(B).

19. **Waiver of Right to Jury Trial.** BORROWER AND LENDER EACH KNOWINGLY AND WITH FULL CONSENT, DOES HEREBY WAIVE AND RELEASE ALL RIGHTS TO A JURY TRIAL.

20. **Damages.** BORROWER AND LENDER EACH AGREES THAT IN ANY ACTION, SUIT OR PROCEEDING, AND IN RESPECT OF OR ARISING OUT OF THIS NOTE, OR ANY DOCUMENT RELATING TO THIS LOAN TRANSACTION, BORROWER

AND LENDER EACH WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW, ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.

21.    **Waiver of Automatic Stay.** IN THE EVENT THAT A PROCEEDING UNDER ANY BANKRUPTCY OR INSOLVENCY LAW IS COMMENCED BY OR AGAINST BORROWER AND AN ORDER FOR RELIEF IS ENTERED AS A RESULT OF SUCH PETITION, BORROWER HEREBY CONSENTS TO RELIEF FROM THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. §362 TO ALLOW LENDER TO EXERCISE ITS RIGHTS AND REMEDIES HEREUNDER WITH RESPECT TO THE BORROWER'S PROPERTY.

22.    **Representation by Counsel.** BORROWER ACKNOWLEDGES THAT BORROWER HAS BEEN ADVISED OF BORROWER'S RIGHT TO BE REPRESENTED BY COUNSEL OF BORROWER'S OWN CHOICE AND KNOWINGLY AND VOLUNTARILY GRANTED TO LENDER THE RIGHTS SET FORTH HEREIN, INCLUDING, BUT NOT LIMITED TO, THE RIGHTS SET FORTH IN PARAGRAPHS 18, 19, 20, AND 21 HEREOF.

23.    **Right of Setoff.** BORROWER HEREBY GRANTS TO LENDER A LIEN, SECURITY INTEREST AND A RIGHT OF SETOFF AS SECURITY FOR ALL LIABILITIES AND OBLIGATIONS TO LENDER, WHETHER NOW EXISTING OR HEREAFTER ARISING, UPON AND AGAINST ALL DEPOSITS (INCLUDING ESCROW ACCOUNTS), CREDITS, COLLATERAL AND PROPERTY, NOW OR HEREAFTER IN THE POSSESSION, CUSTODY, SAFEKEEPING OR CONTROL OF LENDER OR ANY ENTITY UNDER THE CONTROL OF LENDER, OR IN TRANSIT TO ANY OF THEM.   AT ANY TIME, WITHOUT DEMAND OR NOTICE, LENDER MAY SET OFF THE SAME OR ANY PART THEREOF AND APPLY THE SAME TO ANY LIABILITY OR OBLIGATION OF BORROWER EVEN THOUGH UNMATURED AND REGARDLESS OF THE ADEQUACY OF ANY OTHER COLLATERAL SECURING THIS NOTE.   ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO

ANY OTHER COLLATERAL WHICH SECURES THIS NOTE PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.  LENDER SHALL NOT BE REQUIRED TO MARSHAL ANY PRESENT OR FUTURE SECURITY FOR, OR GUARANTEES OF, THE OBLIGATIONS OR TO RESORT TO ANY SUCH SECURITY  OR GUARANTEE IN ANY PARTICULAR ORDER AND THE BORROWER WAIVES, TO THE FULLEST EXTENT THAT IT LAWFULLY CAN, (a) ANY RIGHT IT MIGHT HAVE TO REQUIRE THE LENDER TO PURSUE ANY PARTICULAR REMEDY BEFORE PROCEEDING AGAINST BORROWER AND (b) ANY RIGHT TO THE BENEFIT OF, OR TO DIRECT THE APPLICATION OF THE PROCEEDS OF ANY COLLATERAL UNTIL THE NOTE IS  PAID IN FULL.

24.    **Cross-Default and Cross-Collateralization.**  This loan shall be cross-defaulted and cross-collateralized with all other loans from Lender to Borrower, whether now existing or entered into at a later date.

25.    **Returned Checks.**  If a check from Borrower is returned by a financial institution for any reason whatsoever, Borrower shall pay to Lender a Fifty ($50.00) Dollar charge, plus all bank fees incurred by Lender.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, Borrower has set their hands and seals to this Note the day and year first above written.

**BORROWER:**

| | |
|---|---|
| _____ | _____ (SEAL) |
| Witness | ASHRAFUL ISLAM |
| _____ | _____ (SEAL) |
| Witness | DILRUBA ISLAM |

[Signature Page to Mortgage Note]

## ACKNOWLEDGMENTS

COMMONWEALTH OF PENNSYLVANIA    :
                                      :  SS.

COUNTY OF MONTGOMERY               :

On this, the 19th day of September, 2017, before me, the undersigned officer, personally appeared **ASHRAFUL ISLAM and DILRUBA ISLAM**, known to be or satisfactorily proven to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA

Notarial Seal
Michael Jay Higgins, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Oct. 9, 2017

# EXHIBIT "C"

 

**RECORDER OF DEEDS**
**MONTGOMERY COUNTY**
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

MTG BK 14411 PG 00494 to 00518
INSTRUMENT # : 2017070953
RECORDED DATE: 09/21/2017 12:35:38 PM



3517758-0020V

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | | Page 1 of 25 |
|---|---|---|

| Document Type: Mortgage | Transaction #: | 3632522 - 2 Doc(s) |
|---|---|---|
| Document Date: 09/19/2017 | Document Page Count: | 24 |
| Reference Info: | Operator Id: | estaglia |

| RETURN TO: (Simplifile) | PAID BY: |
|---|---|
| Elkins Park Abstract Company | ELKINS PARK ABSTRACT COMPANY |
| 721 Dresher Road | |
| Horsham, PA 19044 | |
| (215) 830-1100 | |

**\* PROPERTY DATA:**

Parcel ID #:     11-00-09548-00-8
Address:         409 W MAIN ST

                 LANSDALE PA
                 19446
Municipality:    Lansdale Borough (100%)
School District: North Penn

**\* ASSOCIATED DOCUMENT(S):**

| FEES / TAXES: | | MTG BK 14411 PG 00494 to 00518 |
|---|---|---|
| Recording Fee:Mortgage | $95.00 | Recorded Date: 09/21/2017 12:35:38 PM |
| Additional Pages Fee | $40.00 | |
| Affordable Housing Pages | $80.00 | I hereby CERTIFY that this document is |
| | | recorded in the Recorder of Deeds Office in |
| Total: | $215.00 | Montgomery County, Pennsylvania. |



Jeanne Sorg
Recorder of Deeds

Rev1 2016-01-29

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

| | |
|---|---|
| Prepared by: | Friedman, Schuman, P.C.<br>101 Greenwood Avenue, Fifth Floor<br>Jenkintown, PA  19046<br>(215) 635-7200 |
| Return to: | Friedman, Schuman, P.C.<br>101 Greenwood Avenue, Fifth Floor<br>Jenkintown, PA  19046<br>(215) 635-7200 |
| Parcel ID No.: | 11-00-09548-00-8 |

**This is an Open-End Mortgage
under 42 Pa. C.S.A. § 8143, *et seq.***

OPEN-END MORTGAGE AND SECURITY AGREEMENT
**[THIS MORTGAGE SECURES FUTURE ADVANCES]**

**THIS OPEN-END MORTGAGE AND SECURITY AGREEMENT** (hereinafter referred to as the "Mortgage"), is made this 19th day of September, 2017, by **ASHRAFUL ISLAM and DILRUBA ISLAM** , husband and wife ("Mortgagor"), with an address at 1611 Clearview Road, Lansdale, PA 19446, to **EXCEL FINANCIAL CORP.** ("Lender"), with offices at 455 Pennsylvania Avenue, Suite 2LF, Fort Washington, PA 19034.

**WITNESSETH:**

WHEREAS, THIS IS AN OPEN-END MORTGAGE UNDER 42 Pa. C.S.A. § 8143, *et seq.*, as amended; and

WHEREAS, Mortgagor has executed and delivered to Lender its Mortgage Note dated of even date herewith (the "Note") evidencing Mortgagor's indebtedness to Lender in the principal amount of One Hundred Sixty Thousand Dollars, in accordance with a certain Loan Agreement dated of even date herewith (the "Loan Agreement"), together with interest thereon (which interest may be adjusted from time to time, as more fully set forth in the Note) payable at the rate and times, in the manner, and according to the terms and conditions specified in the Note; and

WHEREAS, all of the terms, conditions and provisions of the Note and the Loan Agreement are by reference incorporated herein, as if fully set forth; and

WHEREAS, Mortgagor has duly executed and delivered this Mortgage to secure all of Mortgagor's obligations under the Note and under all of the "Loan Documents," as hereinafter defined.

NOW THEREFORE, in consideration of the aforesaid indebtedness, and to secure the payment of all sums due or to become due under the Note, under the Loan Agreement and under the terms of this Mortgage, and to secure the payment of all sums advanced by Lender to Mortgagor, as well as to secure the performance and observance of all the terms, conditions and provisions of the Note and Loan Agreement, this Mortgage and certain other agreements and instruments made and given or to be made and given by or on behalf of Mortgagor to Lender in connection with or pursuant to the terms of the Note, the Loan Agreement and this Mortgage

{Client Files/005696/00106/01078674.DOCX;1}

(collectively the "Loan Documents"), Mortgagor has granted, bargained, conveyed, sold, aliened, enfeoffed, released, confirmed and mortgaged, and by these presents does hereby grant, bargain, convey, sell, alien, enfeoff, release, confirm and mortgage unto Lender, its successors and assigns, the Premises known as and located at 407-409 W. Main Street, Lansdale, PA 19446, as more specifically described on the metes and bounds legal description, attached hereto, made a part hereof, and labeled **Exhibit "A"** (referred to herein as the "Real Estate").

TOGETHER WITH all of Mortgagor's right, title and interest in and to, now owned or hereafter acquired in:

(i)  All buildings, structures and improvements of every kind and description now or hereafter erected or placed on the Real Estate.

(ii)  All tenements, hereditaments, appurtenances and all the estates and rights of Mortgagor in and to the Real Estate or any part thereof.

(iii)  All streets, roads, passages, ways, waters, water courses, easements, and privileges of whatsoever kind or character, belonging to, and adjoining, used in connection with or in any way appertaining to the Real Estate.

(iv)  All reversions, remainders, easements, rents, issues, income and profits arising or issuing from the Real Estate and/or the buildings, structures and improvements now or hereafter erected or placed thereon, or any portion thereof, including, but not limited to, the rents, issues, income and profits arising or issuing from all insurance policies, sale agreements, licenses, options, leases and subleases now or hereafter entered into covering any part of the Real Estate and/or the buildings, structures and improvements now or hereafter erected or placed thereon, or any portion thereof, all of which insurance policies, sale agreements, licenses, options, leases, subleases, rents, issues, income and profits are hereby assigned to Lender by Mortgagor. Mortgagor will execute and deliver to Lender, on demand, such separate, specific assignments and instruments as Lender may require to implement, confirm, maintain and continue the assignment hereunder.  Mortgagor hereby appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact to collect such rents, issues and profits.

(v)  All awards, damages, payments and other compensation, and any and all claims therefor, and rights thereto, which may result from taking or injury by virtue of the exercise of the power of eminent domain, or to, or any damage, injury or destruction in any manner caused to the Real Estate and/or the buildings, structures and improvements now or hereafter erected or placed thereon, or any portion thereof, all of which awards, damages, payments, compensation, claims and rights are hereby assigned to Lender to the fullest extent that Mortgagor may do so under any law now

existing or hereinafter adopted. Mortgagor hereby appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact to collect any such awards, damages, payments and compensation.

(vi) Except for certain personal property which is a "fixed asset," as that term is defined in Chapter 55 §4300, *et seq.,* of the Pennsylvania Code, all fixtures, fittings, furnishings, furniture, trade fixtures, machinery, equipment, apparatus, building materials, appliances, goods, supplies, tools, chattels, and all articles of tangible personal property of whatever kind and nature, together with all replacements thereof, substitutions therefor and additions and accessions thereto, and all proceeds and profits thereof and therefrom, now or at anytime hereafter affixed or attached to, installed upon, included within, or used in any way in connection with the construction, use, enjoyment, operation, maintenance or occupancy of the Real Estate and the buildings, structures and improvements now or hereafter erected or placed thereon; and all agreements, contract rights, chattel paper, negotiable instruments, general intangibles, accounts, instruments, and documents (as those terms are defined in the Pennsylvania Uniform Commercial Code). Any item referred to in this paragraph (vi) shall hereinafter, for the purposes of creating a security interest therein under the Pennsylvania Uniform Commercial Code, sometimes be referred to as the "Personal Property".

The Real Estate, and all of the right, title and interest of Mortgagor therein and thereto, and all of the property rights, title and interest referred to in paragraphs (i) through (vi) above shall hereinafter sometimes be referred to collectively as the "Mortgaged Property".

TO HAVE AND TO HOLD the Mortgaged Property hereby granted and conveyed, or mentioned and intended so to be, unto Lender, its successors and assigns, for its and their own use and benefit forever.

PROVIDED, HOWEVER, that if Mortgagor pays to Lender the principal and interest to become due under the Note at the time and in the manner stipulated therein, pays all other sums payable by Mortgagor to Lender as are secured hereby, and if Mortgagor performs and complies with all the agreements, conditions, covenants and provisions contained in the Loan Agreement, the Note and this Mortgage, and if Mortgagor pays all satisfaction costs, including the recording costs for any Mortgage satisfactions and termination statements, then this Mortgage and the estate, right, title and interest of Lender in and to the Mortgaged Property shall cease and become void. Until such time, Mortgagor covenants, represents, promises, warrants and agrees to and with Lender as follows:

1. **Mortgagor's Title.** Mortgagor warrants, covenants and represents as follows:

    1.1    Mortgagor has good and marketable and unencumbered fee simple title to the Mortgaged Property;

1.2    Mortgagor is lawfully authorized to mortgage and encumber the Mortgaged Property;

1.3    Mortgagor has not created, and will not (except as otherwise contemplated pursuant to the Loan Agreement) create, or permit or suffer to be created, any liens, encumbrances or security interests in or on the Mortgaged Property, other than this Mortgage, or create, or permit or suffer to be created, any reservation of title by any party other than Lender with respect to any portion of the Mortgaged Property; and

1.4    Mortgagor will forever warrant and defend the title to the Mortgaged Property unto the Lender, its successors and assigns against all persons and all claims of every kind and nature whatsoever.

2.    **Payment and Performance by Mortgagor.**

2.1    Mortgagor shall pay to Lender all principal, interest and other sums now or hereafter due and payable to Lender under the terms of the Note (which provides for an adjustable rate of interest), the Loan Agreement, this Mortgage, and all other Loan Documents, as and when the same shall become due and payable by the terms thereof and hereof.

2.2    Mortgagor shall perform and comply with all terms, conditions, provisions, covenants and agreements on the part of Mortgagor to be observed and performed under this Mortgage, the Note, the Loan Agreement, and all other agreements and instruments given by or on behalf of Mortgagor in connection with the Note, the Loan Agreement or this Mortgage. All the terms, conditions and provisions of such other agreements and instruments are by reference incorporated herein, as if fully set forth.

2.3    Mortgagor shall timely perform all of its obligations and duties under any present or future lease, easement, license, permit, approval, covenant or agreement relating to, affecting, created for the benefit of or used in connection with the operation of all or any portion of the Mortgaged Property.

3.    **Maintenance and Repair.**  Mortgagor shall keep and maintain the Mortgaged Property and the sidewalks, curbs and drives abutting and adjacent thereto, if any, in good and tenantable order, condition and repair, and will make as and when necessary all repairs, renewals, restorations and replacements, structural and not structural, exterior and interior, ordinary and extraordinary, foreseen and unforeseen. All such repairs, renewals, restorations and replacements made by Mortgagor shall be at least equal in quality to the original portion of the Mortgaged Property being repaired, renewed or replaced. Mortgagor shall abstain from and shall not permit the commission of waste in or about the Mortgaged Property.

4.    **Removal, Demolition and Alteration.**  Mortgagor shall not undertake or permit the removal or demolition of any building at any time erected on or forming a part of the Mortgaged Property, nor shall Mortgagor, without Lender's prior written consent, which shall not be unreasonably withheld, undertake or permit any alteration in the design or structural character of any such building.

5.    **Inspection by Lender.**  Mortgagor will permit Lender and Lender's agents and representatives to enter the Mortgaged Property and all parts thereof, at reasonable times, upon

reasonable prior notice, to inspect the Mortgaged Property and to photograph the condition and state of repair of the Mortgaged Property.

## 6. **Insurance.**

6.1    Mortgagor shall keep all buildings and improvements, now existing or hereafter erected on or forming a part of the Mortgaged Property, and all of the Personal Property, continuously insured, to the extent of the full replacement value thereof, without co-insurance, against loss or damage by fire, with extended coverage, vandalism and malicious mischief.  Mortgagor shall also insure against such other hazards as Lender may require from time to time, and shall maintain in full force and effect during the term of this Mortgage, public liability and property damage insurance with contractual liability endorsement, worker's compensation, and flood insurance relating to the Mortgaged Property, including all building and improvements now or hereafter constructed upon or forming a part of the Mortgaged Property and including all Personal Property.  Mortgagor shall also provide all other insurance coverages and in such amounts as shall be required under the Loan Agreement and from time to time otherwise reasonably required by Lender.  All such insurance shall be in such amounts as is necessary to comply with co-insurance requirements and otherwise, as Lender shall require, and shall be with such company or companies as are satisfactory to Lender.  All policies of insurance shall be in form satisfactory to Lender and shall be delivered by Mortgagor to Lender, with premiums prepaid, as additional security for the payment of the indebtedness secured by this Mortgage, shall name Lender as a co-insured or be endorsed with a standard mortgagee clause in favor of Lender, making all losses payable to Lender, shall not be subject to contribution, shall be for a term of at least one (1) year, shall contain a replacement value clause or endorsement in form and substance satisfactory to Lender, and shall provide for cancellation or modification only upon at least thirty (30) days prior written notice to Lender.

6.2    If any of the insurance referred to herein, or any part thereof, shall expire, or be canceled, or become void or voidable by reason of the breach of any condition thereof, or if Lender determines that such coverage is unsatisfactory due to the failure or impairment of the capital of any company in which the insurance may then be carried, or if for any reason whatever the insurance shall be or become unsatisfactory to Lender, Mortgagor shall place new insurance on the Mortgaged Property, satisfactory to Lender.

6.3    If Lender acquires title to the Mortgaged Property, either by virtue of a judicial sale thereof pursuant to proceedings under the Note or upon this Mortgage or by virtue of a deed-in-lieu-of-foreclosure, or otherwise, then, and in any such event, all of Mortgagor's right, title and interest in and to all insurance policies referred to herein, including unearned premiums thereon and the proceeds thereof, shall vest in Lender.

## 7. **Taxes, Assessments and Other Charges.**

7.1    Mortgagor shall pay, prior to the accrual of any interest or penalties, without any deduction, defalcation or abatement, and shall furnish to Lender proper receipts for, within five (5) days after their respective due dates, all ground rents, taxes, assessments, water and sewer rents, licenses or permit fees, and all other charges or claims (collectively, the "Charges") which may be assessed, levied, charged, imposed or filed at any time against Mortgagor, the Mortgaged Property or any part thereof, or against the interest of Lender therein, by any governmental instrumentality or agency or other lawful authority or by any deed restriction, private agreement or declaration, recorded or otherwise, or which by any present or

future law may have priority over the indebtedness secured hereby, either in lien or in distribution out of the proceeds of any judicial sale. Mortgagor will pay, when due, all charges for utilities, whether public or private, used or consumed upon, in or in connection with the Mortgaged Property.

       7.2    If requested at any time by Lender, or upon an Event of Default, in addition to the monthly installment of principal and interest due to Lender, Mortgagor shall pay to Lender, on the payment date of said installments of principal and interest, until the Note is fully paid, a sum (the "Escrow Payment") equal to one-twelfth (1/12) of the annual real estate taxes, other municipal assessments and the estimated annual premiums for all insurance required hereunder (the "Escrow Charges"), with an initial deposit to cover the months which will have elapsed between the last date such taxes, charges and premiums were due and payable and the first date on which an installment shall be due hereunder. The Escrow Payments may be commingled with other funds of Lender and no interest thereon shall be due or payable to Mortgagor. Lender shall apply the Escrow Payments to the payment of the Escrow Charges in such order or priority as Lender shall determine. If, at any time, the Escrow Payments theretofore paid to Lender shall be insufficient for the payment of the Escrow Charges, Mortgagor, within ten (10) days after demand, shall pay the amount of the deficiency to Lender. If, at any time, the Escrow Payments exceed the Escrow Charges, Lender shall, in its discretion, return any excess to Mortgagor or credit such excess against future Escrow Payments. Any Escrow Payments shall constitute additional security for the indebtedness secured hereunder.

       7.3    After prior written notice to Lender, Mortgagor, at Mortgagor's own expense, may contest, or permit to be contested, by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any Charges, provided that: (i) there has been no Event of Default under the Note or this Mortgage; (ii) Mortgagor is permitted to do so under the provisions of any mortgage junior in lien to this Mortgage; (iii) such proceeding shall suspend the collection of the Charges from Mortgagor and from the Mortgaged Property; (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Mortgagor is subject and shall not constitute a default thereunder; (v) neither the Mortgaged Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost; (vi) adequate reserves for the payment of the contested Charges, together with all interest and penalties thereon, shall have been set aside, and (vii) Mortgagor shall have furnished to Lender, or caused to be furnished to Lender, such security as may be required in the proceeding, or as may be requested by Lender to insure the payment of any such contested Charges, together with all interest and penalties thereon.

       **8.**    **Sale or Transfer of the Mortgaged Property.**  Mortgagor shall not, without the prior written consent of Lender:  (i) sell, transfer, convey or assign the Mortgaged Property, or any part thereof, or any interest therein, including, but not limited to, an equitable interest in the Mortgaged Property, or any part thereof, to any party; or (ii) permit the sale, transfer, conveyance or assignment of the Mortgaged Property or any part thereof or any interest therein, either voluntarily or by operation of law.

       **9.**    **Internal Revenue Stamps.**  If at any time the United States Government or any department or bureau thereof shall require Internal Revenue stamps on the Note or other indebtedness secured hereby, Mortgagor shall, upon demand made by Lender, pay for such stamps, together with any interest and penalties payable with respect thereto.

**10.    Taxation of Note and Mortgage.** If any law is hereafter enacted: (i) deducting from the value of real estate, for the purposes of taxation, any lien or encumbrance thereon; (ii) revising or changing in any way the laws and ordinances now in force for the taxation of mortgages or the debts secured thereby, or the manner of collection of such taxes; (iii) imposing a tax directly or indirectly on Lender with respect to the Mortgaged Property, the value of Mortgagor's equity therein, the indebtedness evidenced by the Note and/or secured by this Mortgage; (iv) requiring Lender to pay, in whole or in part, any tax, assessment, charge or lien required to be paid by Mortgagor pursuant to the terms of this Mortgage; then, and in any such event, the entire unpaid balance of the indebtedness secured by this Mortgage shall, at the option of Lender, without notice to Mortgagor, become immediately due and payable, unless, to the extent permitted by such law or ordinance, Mortgagor is authorized to, and does, pay or reimburse Lender for the full amount of any such tax, assessment, charge or lien.

**11.    Compliance with Laws.**

**11.1    Laws.** Mortgagor, at its sole cost and expense, shall promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments or political subdivisions, courts, departments, commissions, boards, agencies, and officers, and any national or local board of fire underwriters relating in any way to the Mortgaged Property or any portion thereof, and shall promptly comply with all orders and notices of violation of any such laws, ordinances, orders, rules, regulations and requirements. Mortgagor shall promptly pay all license and permit fees and similar municipal charges relating in any way to the Mortgaged Property or any portion thereof or the construction or use of any building and improvement placed or to be placed upon and forming a part of the Mortgaged Property.

**11.2** Mortgagor shall immediately notify Lender of Mortgagor's receipt of notice from any agency, instrumentality or body referred to in paragraph 11 hereof relating to the construction, use or occupancy of the Mortgaged Property or any part thereof, or which requires any action to be taken with respect to the Mortgaged Property or any part thereof or which could have an adverse effect on the Mortgaged Property or any part thereof.

**12.    Declaration of No Set-Off.** Within ten (10) days after being requested to do so by Lender, Mortgagor shall furnish to Lender or to any assignee of the Note and/or this Mortgage, a written statement in form and substance satisfactory to Lender, stating the entire outstanding amount of the indebtedness secured by this Mortgage, and stating either that Mortgagor has no offsets, recoupments, counterclaims or defenses to or against such indebtedness, or, if such offsets, recoupments, counterclaims or defenses are alleged to exist, the nature and extent thereof.

**13.    Additional Financing.** Mortgagor shall not, without the prior written consent of Lender, undertake any additional financing in connection with the purchase or improvement of the Mortgaged Property or any part thereof, or create or cause or permit to exist any further lien on or security interest in the Mortgaged Property or any part thereof.

**14.    Protection of Mortgage Lien.** Mortgagor will promptly perform and observe, or cause to be performed and observed, all of the terms, covenants and conditions of all instruments of record affecting the Mortgaged Property, or imposing any duty or obligation upon Mortgagor or any occupant or tenant of the Mortgaged Property or any part thereof. Mortgagor shall do or cause to be done all things necessary to preserve intact and unimpaired any and all easements,

appurtenances and other interests and rights in favor of or constituting any portion of the Mortgaged Property.

15. **Costs, Expenses and Counsel Fees.** Mortgagor shall pay all expenses incurred by Lender incident to the preparation, execution, delivery and/or recording of the Note, this Mortgage and any other Loan Document. Mortgagor shall, upon demand made by Lender, promptly pay to Lender all expenses and costs, including reasonable attorneys' fees, incurred by Lender to collect any of the indebtedness secured hereby or to enforce the performance of the terms, conditions, provisions, agreements and covenants contained herein, in the Note or in any other Loan Document, whether or not suit is instituted, or incurred by Lender in connection with any action, proceeding, litigation or claim instituted or asserted by or against Lender or in which the Lender becomes engaged, wherein it becomes necessary, in the opinion of Lender, to enforce, defend or uphold the lien of this Mortgage or the validity or effectiveness of any assignment of any claim, award, payment, insurance recovery or any other right or property conveyed, encumbered or assigned by Mortgagor to Lender hereunder, or the priority of any of the same or otherwise. All such expenses, costs and attorneys' fees, together with interest thereon at the rate set forth in the Note in the event of a default thereunder, shall be deemed to be part of the principal indebtedness evidenced by the Note and secured by this Mortgage. Further, the exercise by Lender of its rights and remedies and the entry of any judgment by Lender shall not affect in any way the obligation of the Mortgagor to pay any and all costs and legal fees which may become due after the entry of any judgment. Such costs and fees, inclusive of the costs to preserve the Mortgaged Property, shall continue to accrue after the entry of any judgment, whether by confession, default or otherwise, until the Lender is paid in full.

16. **Security Interest in Personal Property.** Mortgagor and Lender hereby acknowledge that this Mortgage constitutes a security agreement under the Uniform Commercial Code, and Mortgagor hereby grants to Lender a security interest in and to every item of Personal Property and the proceeds thereof and profits therefrom, replacements and substitutions therefor and additions and accessions thereto. Mortgagor shall, upon demand made by Lender, execute, deliver and file any financing statements, continuation statements and other instruments, as Lender may from time to time require in order to perfect, confirm and maintain such perfected security interest under the Pennsylvania Uniform Commercial Code. Mortgagor hereby irrevocably appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact to execute, deliver and file, on Mortgagor's behalf and in their name, any such financing statements, continuation statements, and other instruments as Lender, in its sole discretion, deems necessary.

16.1 Except as otherwise contemplated by the Loan Agreement, Mortgagor hereby warrants and represents to Lender that Mortgagor is and will be the owner of every item of the Personal Property, free from any leases, conditional sales, chattel mortgages, security interests, liens or encumbrances, other than the security interest hereby created. Mortgagor further hereby represents and warrants to Lender that, unless Lender gives its prior written consent to the contrary, and except as previously disclosed to Lender in writing, every item of the Personal Property has been, and shall be, purchased for cash or in such a manner that no lien shall be created thereon, except the security interest hereby created.

17. **Rents, Profits and Leases.** Mortgagor hereby assigns and transfers unto Lender, its successors and assigns: (i) all rights, title, interest and privileges which Mortgagor has or may have as lessor in any lease now existing or hereafter made and affecting the Mortgaged Property or any part thereof, together with any extensions or renewals of such leases (collectively, the

"Leases" and individually, a "Lease"); and (ii) all rents, income, and profits due or to become due under the Leases, or any of them, or arising or accruing from or relating to the Mortgaged Property, or any portion thereof, or the use thereof, and Mortgagor hereby confers upon Lender, immediately upon Mortgagor's default in any respect under this Mortgage, the Note or any other Loan Documents, the right to enter upon and take possession of the Mortgaged Property, or any portion thereof, and the right, with or without taking possession of the Mortgaged Property, to collect and receive all rents, income and profits accruing from the Leases and from the Mortgaged Property.

17.1    Mortgagor hereby warrants, certifies, covenants and represents to Lender as follows:

17.1.1  That Mortgagor has or will have title to and full right to assign the Leases and the rents, income and profits due and to become due arising from and due pursuant to the Leases and from the Mortgaged Property.

17.1.2  That Mortgagor will not, without the prior written consent of Lender in each instance, enter into any Lease for all or any portion of the Mortgaged Property, (other than the form of Lease approved by Lender,) alter or modify any Lease, consent to any subletting of any Lease, or subordinate any Lease to any mortgage or other encumbrance, other than this Mortgage.

17.1.3  That Mortgagor has not executed, and will not execute, any prior or other assignment of any of its rights under any of the Leases or its rights to the rent, income and profits therefrom or from the Mortgaged Property.

17.1.4  That as of the date of this Mortgage, there is no Lease respecting all or any portion of the Mortgaged Property, other than those set forth on **Exhibit "B"** which is attached hereto and made a part hereof.

17.2    Mortgagor will, immediately upon request by Lender, execute, acknowledge and deliver to Lender a specific separate Assignment of Rents, Profits and Leases with respect to the Mortgaged Property and a specific separate assignment of individual Lease.

**18.    Destruction of the Mortgaged Property.** In the event of any loss, damage or destruction to or of the Mortgaged Property, or any part thereof, Mortgagor shall give immediate written notice thereof to Lender, and Lender may make proof of loss thereof, if not made promptly by Mortgagor; provided, however, that any adjustment of a proof of loss shall require the prior written consent of Lender. Each insurance company concerned is hereby authorized and directed to make payment under its insurance policies directly to Lender. Lender may, on behalf of Mortgagor, adjust and compromise any claims under any insurance policies. Mortgagor hereby irrevocably constitutes and appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact to adjust and compromise claims and to collect and receive proceeds and to endorse drafts therefor. Any proceeds paid to or collected by Lender, after deducting all costs, fees and expenses incurred by Lender in connection with collecting such proceeds, shall be applied, in such order and amounts as Lender, in Lender's sole discretion, may elect, in reduction of the outstanding principal balance of the Note, accrued and unpaid interest thereon, or any other sum due under and/or secured by the Note or this Mortgage, whether or not then due. Lender shall deliver written notice to Mortgagor of the amount so

applied and of the then outstanding balance of the indebtedness secured by this Mortgage, if the insurance proceeds are insufficient to pay the entire amount thereof.

      18.1   **Repair and Restoration**. Should a casualty loss occur, Lender retains the sole and exclusive right to apply any and all insurance proceeds received against the then outstanding principal balance due under the Note. Should Lender elect to permit Mortgagor to apply said proceeds to reconstruction of the Real Estate, Lender shall apply the insurance proceeds for the repair and restoration of the Mortgaged Property in accordance with the following conditions:

      18.1.1 Prior to commencement of repair and restoration, all contracts, contractors, and plans and specifications thereof, shall be approved by Lender, and Lender shall be provided with mechanics' lien insurance, an acceptable surety bond insuring satisfactory completion of the repair and restoration, copies of all certificates and permits issued by the governmental or quasi-governmental authorities having jurisdiction over the Real Estate, and evidence of the following insurance: (i) a certificate to the effect that the general contractor performing the repair and restoration (the "General Contractor") has procured insurance policies covering workmen's compensation, contingent liability and public liability, protecting the Mortgagor, the Lender and the General Contractor against any liability for loss or damage to persons or property in any way occurring during the process of the repair and restoration or in any way arising therefrom; (ii) an original policy of builder's all risk insurance with extended coverage (with a standard mortgagee clause in favor of the Lender), in an amount and with a company satisfactory to the Lender, and containing a provision allowing the insured to complete the work provided for hereunder; (iii) such other insurance as Lender may reasonably require, and all of the above policies shall contain the agreement of the insurer to give not less than thirty (30) days' notice to the Lender prior to cancellation of such policies or material change in the coverage thereof, and confirmation that no cancellation or change made in the absence of such notice shall be effective as to the Lender.

      18.1.2 At the time of any disbursement of the proceeds, Mortgagor shall not be in default under the Note or the Mortgage, or any other Loan Documents, no mechanics' or materialmen's liens shall have been filed and remain undischarged and/or not bonded against and a satisfactory bring down of title insurance shall be delivered to Lender.

      18.1.3 Disbursement shall be made from time to time in an amount not exceeding the cost of the work completed since the last disbursement, upon receipt of satisfactory evidence of the stage of completion and of performance of the work in a good and workman-like manner in accordance with the contracts and the plans and specifications.

      18.1.4 Lender shall retain ten percent (10%) of the proceeds until the repair and restoration is fully completed.

      18.1.5 The proceeds shall not bear interest and may be commingled with Lender's other funds.

      18.1.6 Lender may impose such other conditions as are customarily imposed by construction lenders.

      18.1.7 Prior to commencement of and at any time during repair and restoration, if the estimated cost thereof, as determined by Lender, exceeds the amount of the

proceeds, Mortgagor shall, immediately upon demand by Lender, pay the amount of such excess to Lender to be added to the proceeds held by Lender.  Any sum so added by Mortgagor which remains upon completion of repair and restoration shall be refunded to Mortgagor.  If any sum remains after the completion and any refund to Mortgagor as aforesaid, such sum remaining shall, at Lender's option, be applied in accordance with the provisions of paragraph 18 hereunder.

      **19.**    **Hazardous Substances.**  Mortgagor makes the following representations and covenants respecting compliance with environmental laws:

      19.1    The term "Environmental Law," as used in this Mortgage, includes all current and future federal, state, and local environmental laws, statutes, regulations and ordinances, including, but not limited to, Pennsylvania "common law," the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, *et seq.*, as amended ("CERCLA"); the Resource Conservation and Recovery Act, 42 U.S.C. §6901, *et seq.*, as amended ("RCRA"); the Toxic Substances Control Act, 15 U.S.C. §2601, *et seq.*, as amended ("TSCA"); the Clean Air Act, 42 U.S.C. §7401, *et seq.*, as amended; the Pennsylvania Solid Waste Management Act, 35 P.S. §6018.101, *et seq.*, as amended ("WMA"); the Pennsylvania Clean Streams Law, 35 P.S. §691.1, *et seq.*, as amended ("CSL"); and the Pennsylvania Hazardous Sites Cleanup Act, 35 P.S. §6020.101, *et seq.*, as amended ("HSCA").

      The term "hazardous substances," as used in this Mortgage, includes "hazardous substances," "hazardous wastes," "toxic substances," petroleum products, asbestos-containing materials, polychlorinated biphenyls, and any and all other pollutants or contaminants regulated or controlled by any of the Environmental Laws.

      19.2    Mortgagor shall not use, or permit any other party or entity to use, the Mortgaged Property for the purpose of generating, treating, producing, storing, handling, transferring, processing, transporting, disposing or otherwise releasing hazardous substances, either on the Mortgaged Property or elsewhere, which (i) creates or causes a contamination, either on the Mortgaged Property or elsewhere, required by any governmental authority to be remediated under any applicable Environmental Law, (ii) creates any form of liability, however direct or indirect, due to such contamination, or (iii) is in contravention of an Environmental Law.

      19.3    Mortgagor shall, in the event of the discharge, spill, injection, escape, emission, disposal, leak or other release of hazardous substances on, in or from the Mortgaged Property, which is not authorized by a permit or other approval issued by the appropriate governmental agencies, promptly notify the Environmental Protection Agency National Response Center and the Pennsylvania Department of Environmental Protection, and shall take all steps necessary to promptly and thoroughly clean up such discharge, spill, injection, escape, omission, disposal, leak or other release in accordance with the provisions of all applicable Environmental Laws and shall receive a certification from the Pennsylvania Department of Environmental Protection or federal Environmental Protection Agency that the Mortgaged Property has been cleaned up to the satisfaction of those agencies.

      19.4    Mortgagor shall and does hereby grant Lender and Lender's agents, employees, contractors, and designees an irrevocable license (coupled with an interest) to enter the Mortgaged Property from time to time to evaluate and monitor the Mortgaged Property for compliance with all Environmental Laws, as well as the terms of the Mortgage, and to perform

appropriate tests and samplings. Mortgagor shall provide Lender with all notices and other communications received from federal, state and local agencies and departments which enforce and administer the Environmental Laws. From time to time Mortgagor shall provide Lender, upon request, with any and all information requested by Lender concerning the use of the Mortgaged Property and Mortgagor's compliance with the Environmental Laws, including, but not limited to, all licenses, permits and certificates, as well as the books and records pertaining to the Mortgaged Property.

19.5    Mortgagor shall require in all leases and subleases that all tenants, subtenants, under-subtenants and other occupants of the Mortgaged Property use and/or occupy the Mortgaged Property in compliance with the Environmental Laws and the terms of the Mortgage.

19.6    Mortgagor shall and hereby does release, indemnify, agree to pay on behalf of and hold harmless Lender, its officers, directors, shareholders, agents, employees, successors and assigns of and from any loss, claim, cost, cause of action, action, demand, damage, fine (civil or criminal), penalty or expense, including clean-up costs, attorney's fees and court costs, which may be incurred, suffered or sustained by reason of any violation or alleged violation of any term of this Mortgage or of any Environmental Laws, caused in whole or in part, regardless of fault, by any past, present or future owner, occupier, tenant, subtenant under-subtenant, licensee, guest, or any other person or entity, including, but not limited to, the Lender. The terms of this subparagraph 19.6 shall survive the payment in full of all sums secured hereby and the satisfaction of record of this Mortgage.

19.7    In the event Lender, in order to protect the priority of this Mortgage, or preserve the value of the Mortgaged Property, or in any situation in which Lender is required, by court order or otherwise, to pay any costs, fees, expenses, settlements, damages, fines (criminal or civil) or penalties, including, but not limited to, clean-up costs, attorney's fees and court costs, because of a past, present or future violation of the Environmental Laws on, in, under, from or about the Mortgaged Property, all such sums shall be added to the amount secured hereby, shall be secured hereby (if this Mortgage is at that time in existence), shall be payable on demand by Mortgagor and shall bear interest at the "Default Rate" set forth in the Note. The terms of this subparagraph 19.7 shall survive the payment in full of all other sums secured hereby and the satisfaction of record of this Mortgage.

19.8    Mortgagor has investigated the prior ownership and uses of the Mortgaged Property, in a manner consistent with good commercial and customary practice, to determine that the Mortgaged Property is free of hazardous substances. Mortgagor, in performing its investigation, has considered among other factors, (i) the relationship of the purchase price to the value of the Mortgaged Property, if uncontaminated when acquired, (ii) commonly known or ascertainable information about the Mortgaged Property, and (iii) the obviousness of the presence or likely presence of contamination.

19.9    Mortgagor warrants and represents to Lender that:

19.9.1 None of the real property owned and/or occupied by Mortgagor, including the Mortgaged Property, has ever been used to treat, store, produce, handle, transfer, process, transport, dispose, or otherwise release hazardous substances which has caused, in any manner, a contamination that might or does require remediation under any applicable Environmental Laws or would create any liability therefor;

19.9.2  There is no pollution or danger of pollution or contamination resulting from a condition which exists on the Mortgaged Property which requires any corrective action under the Environmental Laws or which would result in any liability therefor;

19.9.3  No notification has been filed with regard to a release of hazardous substances on, into or from the Mortgaged Property under the Environmental Laws;

19.9.4  Neither Mortgagor nor any prior owner or occupier of the Mortgaged Property, has received a summons, citation, notice of violation, administrative order, directive, letter or other communication, written or oral, from any governmental or quasi-governmental authority concerning any violation or alleged violation of any Environmental Laws;

19.9.5  There are no underground storage tanks located on the Mortgaged Property;

19.9.6  There are no asbestos-containing materials located on the Mortgaged Property; and

19.9.7  There are no polychlorinated biphenyls (PCB's) located on the Mortgaged Property.

19.10  Mortgagor shall immediately remove from the Mortgaged Property, at Mortgagor's sole cost and expense and in compliance with all applicable Environmental Laws, any materials or other items found in, on, under or around the Mortgaged Property which qualify as hazardous substances or are for any other reason deemed environmentally unacceptable by the Lender, in its sole discretion.

19.11  Lender shall be under no obligation or duty to inspect for or discover any hazardous substances on the Mortgaged Property.

19.12  Mortgagor shall and has complied with all requirements of local and state law in connection with the acquisition of the Mortgaged Property.

19.13  Mortgagor shall and does represent and warrant that no lien has been attached to any revenues or any real or personal property owned by Mortgagor and located in the Commonwealth of Pennsylvania, arising from an intentional or unintentional action or omission of Mortgagor or any previous owner and/or operator of the Mortgaged Property, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of hazardous substances (collectively, "discharges").

19.14  Mortgagor shall and hereby does warrant and represent that it has not received a summons, citation, directive, letter or other communication, written or oral, from the Pennsylvania Department of Environmental Protection or the Environmental Protection Agency concerning any intentional or unintentional action or omission on Mortgagor's part resulting in the discharging of hazardous substances.

19.15  Mortgagor shall furnish the Pennsylvania Department of Environmental Protection and the Environmental Protection Agency with all the information required by the Environmental Laws.

19.16   Mortgagor shall not cause or permit to exist a discharging of a hazardous substance unless said discharge is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal and/or state governmental authorities.

19.17   So long as Mortgagor shall own or operate any real property located in the Commonwealth of Pennsylvania, Mortgagor shall pay or make provision for all payments required by the WMA, CSL, and HSCA.

19.18   In the event that the Pennsylvania Department of Environmental Protection or the Environmental Protection Agency shall file a lien against the Mortgaged Property pursuant to and in accordance with the provisions of the Environmental Laws arising from an intentional or unintentional action or omission or either of Mortgagor, resulting in the discharging of hazardous substances, within sixty (60) days from the date that Mortgagor is given notice that the lien has been placed against the Mortgaged Property or within such shorter period of time in the event that the Commonwealth of Pennsylvania has commenced steps to cause the Mortgaged Property to be sold pursuant to the lien, Mortgagor shall either (i) pay the claim and remove the lien from the Mortgaged Property or (ii) furnish (a) a bond satisfactory to Lender in the amount of the claim out of which the lien arises, (b) a cash deposit in the amount of the claim out of which the lien arises, or (c) other security reasonably satisfactory to Lender in the amount sufficient to discharge the claim out of which the lien arises.

19.19   Mortgagor shall, in the event Mortgagor causes or permits any intentional or unintentional action or omission resulting in the discharging of hazardous substances, without having obtained a permit issued by the appropriate governmental authorities, promptly clean up the same in accordance with the provisions of the WMA, CSL, and HSCA.

20.   **Financial Statements.**  Mortgagor shall deliver, in accordance with the Loan Agreement and at other times upon reasonable request, Mortgagor's current financial statements and such additional information as Lender may require.

21.   **Eminent Domain.**  In the event that the Mortgaged Property, or any part thereof, shall be taken in condemnation proceedings or by the exercise of any right of eminent domain or bona fide sale in lieu thereof (hereinafter collectively referred to as "Condemnation Proceedings"), Mortgagor and Lender shall have the right to participate in any such Condemnation Proceedings.   The award that may be made in any such Condemnation Proceedings and the proceeds thereof or the agreed upon compensation for damages sustained shall be applied by Lender, in such order and amounts as Lender, in its sole discretion, may elect, in reduction of the outstanding principal balance of the Note, all accrued and unpaid interest thereon, or any other sum due under and/or secured by the Note or this Mortgage, whether or not then due.

21.1   Repair and Restoration.  Notwithstanding the provisions of paragraph 21, so long as Mortgagor is not and has never been in default, and there is not and has never been any delinquencies hereunder or under the Note, Lender shall apply the condemnation proceeds for the repair and restoration of the Mortgaged Property in accordance with the following conditions:

21.1.1   Prior to commencement of repair and restoration, all governmental and quasi-governmental permits and approvals, the contracts, contractors, and plans and specifications thereof shall be approved by Lender, and Lender shall be provided with

mechanics' lien insurance and an acceptable surety bond or guarantee insuring satisfactory completion of the repair and restoration.

21.1.2 At the time of any disbursement of the proceeds, Mortgagor shall not be in default under the Note or the Mortgage, no mechanics' or materialmen's liens shall have been filed and remain undischarged and or properly bonded against and a satisfactory bring down of title insurance shall be delivered to Lender.

21.1.3 Disbursement shall be made from time to time in an amount not exceeding the cost of the work completed since the last disbursement, upon receipt of satisfactory evidence of the stage of completion and of performance of the work in a good and workman-like manner in accordance with the contracts and the plans and specifications.

21.1.4 Lender shall retain ten percent (10%) of the proceeds until the repair and restoration is fully completed.

21.1.5 The proceeds shall not bear interest and may be commingled with Lender's other funds.

21.1.6 Lender may impose such other conditions as are customarily imposed by construction lenders.

21.1.7 Prior to commencement of and at any time during repair and restoration, if the estimated cost thereof, as determined by Lender, exceeds the amount of the proceeds, Mortgagor shall, immediately upon demand by Lender, pay the amount of such excess to Lender to be added to the proceeds held by Lender. Any sum so added by Mortgagor, which remains upon completion of repair and restoration, shall be refunded to Mortgagor. If any sum remains after the completion and any refund to Mortgagor as aforesaid, such sum remaining shall, at Lender's option, be applied in accordance with the provisions of paragraph 21 hereunder.

**22.    Events of Default.**  The occurrence of any one or more of the following shall constitute an "Event of Default" hereunder:

22.1    The failure of Mortgagor to pay, after the expiration of any applicable notice and grace periods, any payment of interest, principal or both or any other sum due under and/or secured by this Mortgage, the Note, or any other Loan Documents.

22.2    The failure of Mortgagor to perform or comply with any other of the terms, conditions, provisions, agreements, covenants and conditions contained herein or in the Note or in any other Loan Document within ten (10) days after notice from Lender, unless a greater period of time to cure such default is provided for in the Loan Documents.

22.3    The occurrence of a default or an Event of Default, after the expiration of any applicable grace and notice periods, under this Mortgage, the Note or under any other Loan Documents.

22.4    The filing, by or against Mortgagor of a petition in Bankruptcy, for liquidation, reorganization, arrangement or adjustment or similar remedy under any of the provisions of the Federal Bankruptcy Code, or any amendment or revision thereof, or similar statute applicable to Mortgagor, or any filing for similar relief under the provisions of any other

federal or state insolvency law which, if filed against Mortgagor, is consented to by Mortgagor or remains undismissed for thirty (30) days.

22.5    The making by Mortgagor of an assignment for the benefit of its creditors.

22.6    The appointment of a receiver for Mortgagor or for any of the property or assets of Mortgagor, including, but not limited to, the Mortgaged Property or any part thereof.

22.7    The issuance of any writ or process of execution or attachment against Mortgagor or any property or assets of Mortgagor, including, but not limited to, the Mortgaged Property or any part thereof, or the levy or service of any such writ.

22.8    The occurrence of a default or Event of Default by Mortgagor under any other loan made to Mortgagor by Lender, whether now existing or entered into at a later date.

22.9    The default by Mortgagor in making any payment for money owed or borrowed by Mortgagor.

22.10   The filing of any mechanic's or materialmen's lien or municipal claim against all or any portion of the Mortgaged Property which is not discharged within ten (10) days.

22.11   The entry or filing of any judgment, lien, encumbrance, notice of lien, attachment, levy or any other adverse charge against the Mortgaged Property or any portion thereof which is not discharged within ten (10) days.

22.12   The existence of any security interest in favor of any party other than Lender in any of the Personal Property, or the purchase of any item of the Personal Property on a lease, retained title or installment sale basis.

22.13   If any representation or warranty made to Lender, or any financial statement given to Lender, in or in connection with the Note, the Loan Agreement, or this Mortgage shall appear to be false or incorrect in any respect regarded by Lender as material.

22.14   Mortgagor delivering or causing to be delivered to Lender a notice pursuant to 42 Pa. C.S.A. §8143, *et. seq.*, as amended, electing to limit the indebtedness secured by this Mortgage.

**23.    Remedies.**  Upon the occurrence of any Event of Default, the entire unpaid balance of principal, and all accrued and unpaid interest under the Note, and all other sums due under or secured by this Mortgage shall, at the option of Lender, become immediately due and payable, without notice or demand.  Lender may forthwith, and without delay:

23.1    Institute an action of mortgage foreclosure against the Mortgaged Property, or any portion thereof, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, and proceed therein to final judgment and execution thereon for the entire accelerated indebtedness as aforesaid, together with all costs of suit and attorneys' fees, together with interest at the rate set forth in the Note, on any judgment obtained by Lender from and after the date of any Sheriff's Sale of the Mortgaged Property until actual payment is made by the Sheriff of the full amount due to Lender.

23.1.1 The Mortgaged Property, or any portion thereof, may be sold pursuant to any Writ of Execution issued on a judgment obtained by virtue of the Note or this Mortgage or pursuant to any other judicial proceedings, whether or not under this Mortgage, in one parcel as an entirety, or in such parcels, manner and order as Lender, in its sole discretion, may elect.

23.2    Enter and take possession of the Mortgaged Property and manage and operate the same, let or re-let the Mortgaged Property or any part thereof, cancel, modify and grant indulgences with respect to the Leases, evict tenants, bring or defend any suits in Lender's name or in Mortgagor's name in connection with possession of the Mortgaged Property, make repairs, alterations and improvements, as Lender deems appropriate, and perform such other acts in connection with the management and operation of the Mortgaged Property as Lender, in its sole discretion, deems appropriate, and demand, sue for, collect and receive all or any rents, income and profits accruing from the Mortgaged Property and from the Leases. Any income so derived from the Mortgaged Property and from the Leases shall be applied by Lender, in such order and amounts as Lender shall elect, to the costs of operation and maintenance of the Mortgaged Property, the expenses (including attorney's fees) incident to taking and retaining possession of the Mortgaged Property and collecting the rents, issues and profits therefrom and from any Lease, any other expenses, as Lender shall determine, and monies necessary to satisfy all indebtedness due under and/or secured by the Note and this Mortgage.

23.2.1 THE FOLLOWING SECTION SETS FORTH WARRANTS OF ATTORNEY FOR ANY ATTORNEY TO CONFESS JUDGMENTS AGAINST MORTGAGOR. IN GRANTING THESE WARRANTS OF ATTORNEY TO CONFESS JUDGMENTS AGAINST MORTGAGOR, MORTGAGOR HEREBY KNOWINGLY, INTENTIONALLY, VOLUNTARILY, AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS MORTGAGOR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE COMMONWEALTH OF PENNSYLVANIA AND THE UNITED STATES OF AMERICA.

FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PROPERTY UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD OF THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO BY COMPLAINT OR OTHERWISE, TO APPEAR FOR AND ENTER AND CONFESS JUDGMENT IN FAVOR OF LENDER AND AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, FOR RECOVERY BY LENDER OF POSSESSION OF THE MORTGAGED PROPERTY, FOR WHICH THIS MORTGAGE, OR A COPY HEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; WHEREUPON, IF LENDER SO DESIRES, A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE MORTGAGED PROPERTY, WITHOUT ANY WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE MORTGAGED PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, LENDER SHALL HAVE THE RIGHT IN CONNECTION WITH THE

SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS OR ENTER AND CONFESS JUDGMENT ONE OR MORE TIMES AS HEREIN PROVIDED TO RECOVER POSSESSION OF THE MORTGAGED PROPERTY. LENDER MAY BRING AN ACTION IN EJECTMENT AND CONFESS JUDGMENT THEREIN BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT IN ANY PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OF THE MORTGAGED PROPERTY IN WHICH LENDER IS THE SUCCESSFUL BIDDER.

MORTGAGOR ACKNOWLEDGES THAT MORTGAGOR HAS HAD THE ASSISTANCE OF LEGAL COUNSEL IN THE REVIEW AND EXECUTION OF THIS MORTGAGE AND FURTHER ACKNOWLEDGES THAT THE MEANING AND EFFECT OF THE FOREGOING PROVISIONS CONCERNING CONFESSION OF JUDGMENT HAVE BEEN FULLY EXPLAINED TO MORTGAGOR BY SUCH COUNSEL.

MORTGAGOR ACKNOWLEDGES AND AGREES THAT (A) THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT IS BEING EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION, (B) LENDER'S CONFESSION OF JUDGMENT FOLLOWING AN EVENT OF DEFAULT AND IN ACCORDANCE WITH THE FOREGOING WARRANT OF ATTORNEY WOULD BE IN ACCORDANCE WITH MORTGAGOR'S REASONABLE EXPECTATIONS, AND (C) LENDER DOES NOT AND, IN REGARD TO THE LOAN OR THE LOAN DOCUMENTS, SHALL NOT HAVE ANY OF THE DUTIES TO MORTGAGOR SET FORTH IN 20 PA.C.S.A. §5601.3(B).

23.3    Have a receiver appointed to enter into possession of the Mortgaged Property and to collect the rents, issues, profits and income therefrom and to apply such rents, issues, profits and income as provided for in subparagraph 23.2 hereof or as the court may otherwise direct. Lender shall be entitled to the appointment of a receiver without the necessity of proving either the inadequacy of the security for the indebtedness secured hereby or the insolvency of Mortgagor or any other person who may be legally or equitably liable to pay money secured hereby, and Mortgagor and each such other person shall be deemed to have waived such proof and to have consented to the appointment of such receiver.  Should the Lender or any receiver collect rents, issues, profits or income from the Mortgaged Property, monies so collected shall not be substituted for the payment of the indebtedness secured hereby, nor can they be used to cure the default, without the prior written consent of Lender.  Any receiver shall be liable to account only for the rents, issues, profits and income actually received by such receiver.

23.4    Exercise all of the remedies of a secured party under the Uniform Commercial Code, including, but not limited to, the right and power to sell, or otherwise dispose of, the Personal Property or any part thereof, and for that purpose Lender shall take immediate and exclusive possession of the Personal Property or any part thereof as Lender elects and, with or without judicial process, enter upon any portion of the Mortgaged Property on which the Personal Property, or any part thereof, may be situated and remove the same without being guilty of trespass and without liability for damages thereby occasioned.

23.5    Exercise the rights set forth in paragraph 28 hereof.

23.6    Exercise any other right or remedy otherwise available to Lender and resort to any other security held by Lender for the payment of the indebtedness secured hereby in such order and manner as Lender, in its sole discretion, may elect.

24.    **Remedies Cumulative.**  The rights and remedies of Lender provided for in this Mortgage, in the Note and in any other Loan Document shall be cumulative and concurrent and shall not be exclusive of any right or remedy provided by law, in equity or otherwise.  Said rights and remedies may, at the sole and exclusive discretion of Lender, be pursued singly, successively or together, and may be exercised as often as occasion therefor shall arise.

25.    **Default Rate of Interest.**  Upon the occurrence of any Event of Default, Mortgagor shall pay interest at the Default Rate (as defined in the Note).  The Default Rate shall be computed from the occurrence of the Event of Default until the date the Event of Default is cured.  This charge shall be added to the indebtedness hereunder and shall be deemed secured by this Mortgage.  Nothing contained herein shall be construed as an agreement or privilege to extend the date of the payments under the Note nor as a waiver of any other right or remedy accruing to mortgagee by reason of the occurrence of an Event of Default.  If the Default Rate is above the maximum rate permitted by applicable law, the Default Rate shall be the maximum rate permitted by applicable law.

26.    **Mortgagor's Waivers.**  Mortgagor hereby waives and releases:  (i) all errors, defects and imperfections in any proceeding instituted by Lender under this Mortgage, the Note or any other Loan Document; (ii) all notices of default or of Lender's exercise, or election to exercise, any right or remedy referred to in paragraph 24 hereof; and (iii) the benefit of any laws now or hereafter enacted extending the time for payment of any sum due under or secured hereby or affording any right to a stay of any execution to be issued on any judgment obtained under the Note, this Mortgage or any other Loan Documents or exempting any property from levy and sale upon any such execution.

27.    **No Waiver.**  No failure or delay by Lender in insisting upon the strict performance by Mortgagor of any of the terms, covenants, conditions, agreements and provisions contained herein, in the Note or in any other Loan Documents shall constitute or operate as an estoppel or a waiver of any such terms, covenants, conditions, agreements and provisions, nor shall any such failure or delay preclude Mortgagee from thereafter insisting upon such strict performance by Mortgagor.  Neither Mortgagor, nor any guarantor or surety or other person obligated for the payment of the indebtedness secured hereby, shall be relieved of such obligation by reason of the failure of Lender to comply with any request of Mortgagor, or of any such guarantor, surety or other person, to take action to foreclose this Mortgage or any of the obligations secured by this Mortgage, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the indebtedness secured by this Mortgage, or by reason of any agreement or stipulation between any subsequent owner or owners of the Mortgaged Property and Lender extending the time of payment or modifying the terms of the Note or this Mortgage without first having obtained the consent of Mortgagor or any such guarantor, surety or other person, and Mortgagor and each such guarantor, surety and other person shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Lender.  Lender may release, regardless of consideration, the obligation of any party at any time liable for any of the indebtedness secured by this Mortgage or any part of the security held for the indebtedness secured by this Mortgage without, as to any other person so obligated or the

remainder of such security, in any way affecting such other person's obligation or impairing or affecting the lien of this Mortgage or the priority of the lien of this Mortgage.

**28.** **Lender's Right to Remedy Defaults.** If Mortgagor fails to pay when due any sum required to be paid by Mortgagor or fails to perform any obligation of Mortgagor hereunder, Lender, at its option, shall have the right, but not the obligation, to pay any such sum and to perform any such obligation, and Lender shall have the right, but not the obligation, to pay any sum or take any action which Lender deems necessary or advisable to protect the security of this Mortgage or the Mortgaged Property, all without prejudice to any of Lender's rights or remedies available hereunder or under the Note or any other Loan Documents, at law, or in equity. The amount of all payments so made by Lender, together with all costs so incurred by Lender, shall immediately be due and payable from Mortgagor to Lender, together with all costs so incurred by Lender, together with interest at the rate set forth in the Note, in the discretion of Lender, in the event of a default hereunder, from the date such payment was made or cost incurred by Lender until the date of repayment by Mortgagor. All such amounts, together with interest as aforesaid, shall be added to and evidenced by the Note and secured by this Mortgage.

**29.** **Further Assurances.** Mortgagor will execute and deliver such further instruments and documents, and perform such further acts as may be requested by Lender from time to time to confirm the provisions of, or to carry out more effectively the purposes of this Mortgage, the Note or any other Loan Documents securing the Note. Mortgagor hereby authorizes Lender to execute and deliver such further instruments and documents and to perform such further acts at any time and from time to time, on behalf of Mortgagor. Mortgagor hereby irrevocably appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact, to execute, from time to time, on behalf of Mortgagor, one or more such instruments and documents.

**30.** **Open-End Mortgage.** This Mortgage is an Open-End Mortgage, securing all of Mortgagor's obligations to Lender, including future advances, up to a maximum amount of indebtedness of One Hundred Sixty Thousand Dollars, plus accrued and unpaid interest, maintenance charges, insurance premiums, or costs incurred for the protection of the lien of this Mortgage, expense incurred by Lender by reason of a default hereunder or under the Note or the other Loan Documents, together with all other sums due or secured under or by this Mortgage.

**31.** **Notices and Other Communications.** All notices and other communications required or given under or with respect to this Mortgage shall be in writing, and shall be sent by registered or certified mail, postage prepaid, addressed to Mortgagor or to Lender at their respective addresses set forth in the heading of this Mortgage, or at such other address as the addressee may designate in writing from time to time.

**32.** **Captions.** The heading and captions herein are inserted for convenience of reference only and shall not control or affect the meaning or construction of any of the provisions of this Mortgage.

**33.** **Binding Effect.** This Mortgage shall bind Mortgagor and its successor and assigns and shall inure to the benefit of Lender and Mortgagor and their respective successors and assigns.

34.   **No Amendment.**  This Mortgage shall not be modified or amended, except in writing signed by the party against whom the enforcement of such amendment or modification is sought.

35.   **Severability.**   If any term, covenant or condition of this Mortgage or the application thereof to any party or circumstance shall, to any extent, be invalid, or unenforceable, the remainder of this Mortgage, or the application of such term, covenant or condition to parties or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term, covenant or condition of this Mortgage shall be valid and be enforced to the fullest extent permitted by law.

36.   **Governing Law.**  This Mortgage shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

37.   **Lender's Powers.**   Mortgagor acknowledges and agrees that (a) any powers granted to Lender hereunder are granted in connection with a commercial transaction, (b) Lender's exercise of any such powers would be in accordance with Mortgagor's reasonable expectations, and (c) Lender does not and shall not have any of the duties to Mortgagor set forth in 20 Pa.C.S.A. §5601.3(b), and the same are hereby irrevocably waived by Mortgagor.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK — SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** Mortgagor has caused this Mortgage to be duly executed the day and year first above written.

**MORTGAGOR:**

_____          _____(SEAL)
Witness                                          **ASHRAFUL ISLAM**

_____          _____(SEAL)
Witness                                          **DILRUBA ISLAM**

The address of the within named Lender is:

455 Pennsylvania Avenue, Suite 2LF,
Fort Washington, PA 19034

_____
On behalf of Lender

## ACKNOWLEDGMENTS

COMMONWEALTH OF PENNSYLVANIA     :
                                          :   SS
COUNTY OF MONTGOMERY            :

On this, the 19th day of September, 2017, before me, the undersigned officer, personally appeared **ASHRAFUL ISLAM and DILRUBA ISLAM**, known to be or satisfactorily proven to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

                                      _____
                                           Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Michael Jay Higgins, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Oct. 9, 2017

### Description and Recital

ALL THAT CERTAIN lot or piece of land with the buildings and improvements thereon erected, Situate in the Borough of Lansdale, County of Montgomery and Commonwealth of Pennsylvania, bounded  and described as follows:


BEGINNING at an iron pin on the Northeasterly side of Main Street (fifty-six feet wide) at the distance of fifty-seven feet Northwestwardly from the Northwest side of Wood Street; extending thence along the said Northeast side of Main Street,  Northeastwardly forty-three feet to land now or formerly of Samuel L. Swartley; thence along said land of now or formerly Samuel K. Swartley, Northeastwardly one hundred seventy-two feet  to the Southwest side of Second Street, known as Mill Alley ; thence along said Southwest side of Second Street; Southeastwardly forty-three feet to a stake a corer of land now or late of Cynthia Brady; thence by said land now or late of Cynthia Brady; Southwestwardly one hundred seventy-two feet to the said Northeast side of Main Street, the first above mentioned point and place of beginning.


BEING 409 W. Main Street.


Tax ID / Parcel No.  11-00-09548-00-8

Being the same premises which Dilip Patel and Nalshadh, co-partners by Deed dated 5-2-1996 and recorded 5-10-1996 in Montgomery County in Deed Book 5147 Page 1440 conveyed unto Ashraful Islam and Dilruba Islam, husband and wife, in fee.

EXHIBIT "A"

# EXHIBIT "D"

 



**DEED BK 6062 PG 00699 to 00706**
INSTRUMENT # : 2017070954
RECORDED DATE: 09/21/2017 12:35:39 PM

3517759-0019/

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 8 |
|---|---|

| | | | |
|---|---|---|---|
| **Document Type:** | Deed Miscellaneous | **Transaction #:** | 3632522 - 2 Doc(s) |
| **Document Date:** | 09/19/2017 | **Document Page Count:** | 7 |
| **Reference Info:** | | **Operator Id:** | estaglia |

**RETURN TO:** (Simplifile)
Elkins Park Abstract Company
721 Dresher Road
Horsham, PA 19044
(215) 830-1100

**PAID BY:**
ELKINS PARK ABSTRACT COMPANY

**\* PROPERTY DATA:**
Parcel ID #:        11-00-09548-00-8
Address:            409 W MAIN ST

                    LANSDALE  PA
                    19446
Municipality:       Lansdale Borough (100%)
School District:    North Penn

**\* ASSOCIATED DOCUMENT(S):**

**FEES / TAXES:**
Recording Fee:Deed Miscellaneous    $69.00
Additional Pages Fee                $6.00

Total:                              $75.00

DEED BK 6062 PG 00699 to 00706
Recorded Date: 09/21/2017 12:35:39 PM

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania.



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

| | |
|---|---|
| Prepared by: | Friedman, Schuman, P.C.<br>101 Greenwood Avenue, Fifth Floor<br>Jenkintown, PA 19046<br>(215) 635-7200 |

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
11-00-09548-00-8   LANSDALE BOROUGH
409 W MAIN ST
ISLAM ASHRAFUL & DILRUBA                     $15.00
B 080  L 2  U 016  4100 09/21/2017              MY

Return to:        Friedman, Schuman, P.C.
                  101 Greenwood Avenue, Fifth Floor
                  Jenkintown, PA  19046
                  (215) 635-7200

Parcel ID No.:    11-00-09548-00-8

## ASSIGNMENT OF LEASES AND RENTS

KNOW ALL MEN BY THESE PRESENTS, that **ASHRAFUL ISLAM and DILRUBA ISLAM**, husband and wife, (hereinafter referred to as "Assignor"), with an address at 1611 Clearview Road, Lansdale, PA 19446, in consideration of One Dollar ($1.00) paid by **EXCEL FINANCIAL CORP.**, with offices at 455 Pennsylvania Avenue, Suite 2LF, Fort Washington, PA 19034 (hereinafter referred to as "Assignee"), hereby conveys, transfers and assigns unto Assignee, its successors and assigns, all the rights, interest and privileges, (a) which Assignor as lessor has and may have in any leases now existing or hereafter made and affecting the real property described in **Exhibit "A"** attached hereto, commonly known as 407-409 W. Main Street, Lansdale, PA 19446 (the "Property"), or any part thereof, as such leases may have been, or may from time to time be hereafter, modified, extended and renewed, with all rents, income and profits due and becoming due therefrom, and (b) which Assignor has and may have by virtue of any guaranty or surety agreement with respect to the tenant's obligations under any of such leases, as such guaranties or surety agreements may have been, or may from time to time be hereafter, modified and extended. Assignor will, on request of Assignee, execute assignments of any future leases affecting any part of such real property and assignments of any guaranties or surety agreements made in connection therewith.

1.     This Assignment is made as security for: (a) the full, timely and faithful payment of all indebtedness evidenced by, and performance of all obligations of Assignor under the Note to Assignee in the original principal sum of One Hundred Sixty Thousand Dollars of even date herewith (the "Note"); (b) other collateral documents in connection with the foregoing, including an Open-End Mortgage and Security Agreement (the "Mortgage") from Assignor to Assignee of even date herewith secured by certain parcels of real property (the "Land"); and (c) such other obligations between the Assignor and Assignee as exists on the date hereof or as may hereinafter arise. The Note, Mortgage and other collateral documents, as amended, are hereinafter sometimes collectively referred to as the "Loan Documents."

2.     The acceptance of this Assignment and the collection of rents or the payments under the leases or any sums under any guaranties or surety agreements hereby assigned shall not constitute a waiver of any rights of Assignee under the terms of such Note. It is expressly understood and agreed by the parties hereto that before default occurs under the terms of such Note, Assignor shall have the right to collect such rents, income and profits from the aforementioned leases, guaranties and surety agreements and to retain, use and enjoy the same,

in trust to be applied first to payment of (a) real estate taxes and assessments upon the Property; (b) cost of maintaining the insurance policies on the Property required under the Mortgage; (c) maintenance and repair of the Property; and (d) the payment of all sums becoming due and payable under the Note and Mortgage, before Assignor may use any portion of the rents, income or profits for any other purpose; provided, however, that even before default occurs no rents more than one (1) month in advance shall be collected or accepted without the prior written consent of Assignee.

3.    Anything to the contrary notwithstanding, Assignor hereby assigns to Assignee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency, or reorganization proceedings in any State or Federal court, and any and all payments made by lessees in lieu of rent.  Assignor hereby appoints Assignee as its irrevocable attorney-in-fact to appear in any action and/or to collect any such award or payment. Assignor acknowledges and agrees that (a) the foregoing powers are being executed in connection with a commercial transaction, (b) Assignee's exercise of such powers would be in accordance with Assignor's reasonable expectations, and (c) Assignee does not and, in regards to the Loan or the Loan Documents, shall not have any of the duties to Assignor set forth in 20 Pa. C.S.A. §5601.3(b), and the same are hereby irrevocably waived by Assignor.

4.    Assignor, in the event of default in the performance of any of the terms and conditions of such Note and Mortgage, beyond any applicable cure or grace period, hereby authorizes Assignee, at its option, to enter and take possession of the Property and to manage and operate the same, to collect all or any rents, income or profits accruing therefrom and from such leases, to collect all or any sums due or becoming due under such guaranties and surety agreements, to let or re-let the Property or any part thereof, to cancel and modify leases, guaranties and surety agreements, evict tenants, bring or defend any suits in connection with the possession of the Property in its own name or Assignor's name, make repairs as Assignee deems appropriate, and perform such other acts in connection with the management and operation of the Property as Assignee, in its sole discretion, may deem proper.

5.    The receipt by Assignee of any rents, income or profits pursuant to this instrument after the institution of foreclosure or sale proceedings under the Mortgage shall not cure such default or affect such proceedings or any sale pursuant thereto.

6.    Assignee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Assignor under any of such leases, and Assignor hereby agrees to indemnify Assignee for, and to save it harmless from, any and all liability arising from any of such leases, guaranties, surety agreements or from this Assignment, and this Assignment shall not place responsibility for the control, care, management or repair of the Property upon Assignee, or make Assignee responsible or liable for any negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or other person.

7.    Assignor covenants and represents that: (a) it has title to, and full right to assign such leases, guaranties, surety agreements and the rents, income and profits due or to become due thereunder; (b) to the best of its knowledge, the terms of such leases, guaranties and surety agreements have not been changed from the terms in the copies of such leases, guaranties and

surety agreements submitted to Assignee for approval; (c) to the best of its knowledge, no other assignment of any interest therein has been made, except as set forth herein or in the Mortgage; (d) to the best of its knowledge, there are no existing defaults under the provisions thereof and none of such leases have been canceled; (e) it has not collected any of the rents, income and profits for a period of more than one (1) month in advance, and it shall not discount or compromise any of such rents, income or profits to become due; and (f) it will not hereafter cancel, surrender or terminate any of such leases, guaranties and surety agreements, exercise any option which might lead to such termination, or change, alter or modify them, or consent to the release of any party liable thereunder or to the assignment of the lessees' interest under such leases or guaranties or surety agreements without the prior written consent of Assignee, and with respect to modification of leases, such consent shall not be unreasonably withheld or delayed.

8.      Assignor hereby authorizes Assignee to give notice in writing of this assignment at any time to any tenant under any of such leases and to any guarantor of such leases. Assignor hereby consents to any such tenant or guarantor paying all rent, income and profits to Assignee following receipt by such tenant or guarantor of a notice from Assignee that Assignor is in default under the Note, Mortgage or this Assignment, and Assignor waives any right to demand from any such tenant or guarantor, payment to Assignor of such rent, income or profits after Assignee has sent any such notice to such tenant or guarantor.

9.      Violation of any of the covenants, representations and provisions contained herein by Assignor shall be deemed an Event of Default under the terms hereof and of the Note and Mortgage.

10.     Default by Assignor under any of the terms of the leases assigned herein, beyond any applicable cure or grace period, shall be deemed a default under the terms hereof and of the Note and Mortgage. Any expenditures made by Assignee in curing such a default on Assignor's behalf, with interest thereon at the rate payable upon default under the Note, shall become part of the debt secured by this Assignment and the Mortgage.

11.     The full performance of the Mortgage and the duly recorded satisfaction or release of the Property described therein shall render this Assignment automatically void with respect to the Property or portion thereof described in any such satisfaction or release.

12.     The net proceeds collected by Assignee, after reimbursement of expenses incurred by Assignee, under the terms of this instrument shall be applied in reduction of the entire indebtedness from time to time outstanding and secured by the Mortgage.

13.     The term "lease" shall mean and refer to any lease of all or any portion of the Property as well as any sublease of all or any portion of the Property, and any license, concession or other agreement with respect to the use, occupancy or utilization of all or any portion of the Property. The term "rent" shall mean and refer to all rent, license fees or charges, concession fees or charges, and all other payments of any kind (including, without limitation, security deposits, to the extent that they may be lawfully assigned, and all payments made on account of operating expenses and real estate taxes and other similar items, whether categorized as rent, additional rent or otherwise) with respect to the use, occupancy or utilization of all or any portion of the Property.

DEED BK 6062      PG 00703

14.    The Assignment applies to and binds the parties hereto and their respective heirs, administrators, executors, successors and assigns, as well as any subsequent owner of the Property described herein and any assignee of the Mortgage referred to herein.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the Assignor hereto has caused this Assignment of Leases and Rents to be executed this 19th day of September, 2017.

**ASSIGNOR:**

_____                    _____ (SEAL)
Witness                                            **ASHRAFUL ISLAM**

_____                    _____ (SEAL)
Witness                                            **DILRUBA ISLAM**

# ACKNOWLEDGMENTS

COMMONWEALTH OF PENNSYLVANIA    :
                                :  SS.
COUNTY OF MONTGOMERY            :

On the 19th day of September, 2017, before me, the undersigned officer, personally appeared Ashraful Islam, known to be or satisfactorily proven to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
┌─────────────────────────────────────┐
│          Notarial Seal               │       _____
│   Michael Jay Higgins, Notary Public │            Notary Public
│   Horsham Twp., Montgomery County    │
│   My Commission Expires Oct. 9, 2017 │
└─────────────────────────────────────┘

COMMONWEALTH OF PENNSYLVANIA    :
                                :  SS.
COUNTY OF MONTGOMERY            :

On the 19th day of September, 2017, before me, the undersigned officer, personally appeared Dilruba Islam, known to be or satisfactorily proven to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
┌─────────────────────────────────────┐
│          Notarial Seal               │       _____
│   Michael Jay Higgins, Notary Public │            Notary Public
│   Horsham Twp., Montgomery County    │
│   My Commission Expires Oct. 9, 2017 │
└─────────────────────────────────────┘

{Client Files/005696/00106/01078664.DOCX;1}

### Description and Recital

ALL THAT CERTAIN lot or piece of land with the buildings and improvements thereon
erected, Situate in the Borough of Lansdale, County of Montgomery and Commonwealth of
Pennsylvania, bounded and described as follows:

BEGINNING at an iron pin on the Northeasterly side of Main Street (fifty-six feet wide) at the
distance of fifty-seven feet Northwestwardly from the Northwest side of Wood Street;
extending thence along the said Northeast side of Main Street, Northeastwardly forty-three
feet to land now or formerly of Samuel L. Swartley; thence along said land of now or
formerly Samuel K. Swartley, Northeastwardly one hundred seventy-two feet to the
Southwest side of Second Street, known as Mill Alley ; thence along said Southwest side of
Second Street; Southeastwardly forty-three feet to a stake a corer of land now or late of
Cynthia Brady; thence by said land now or late of Cynthia Brady; Southwestwardly one
hundred seventy-two feet to the said Northeast side of Main Street, the first above
mentioned point and place of beginning.

BEING 409 W. Main Street.

Tax ID / Parcel No. 11-00-09548-00-8

Being the same premises which Dilip Patel and Naishadh, co-partners by Deed dated
5-2-1996 and recorded 5-10-1996 in Montgomery County in Deed Book 5147 Page 1440
conveyed unto Ashraful Islam and Dilruba Islam, husband and wife, in fee.

EXHIBIT "A"