## **SETTLEMENT AGREEMENT & MUTUAL RELEASE**

THIS SETTLEMENT AGREEMENT effective as of the 9th day of January, 2026, in full and final settlement of the disputes between the Debtor, Ashraful Islam (the "Debtor") and the secured creditor, Excel Financial Corp. ("Excel"), in connection with the action captioned as *In Re: Ashraful Islam, United States Bankruptcy Court for the Eastern District of Pennsylvania (Philadelphia), Chapter 13, Bankruptcy No. 22-13182* and, more specifically therein the Motion of Excel Financial Corp. for Relief from the Automatic Stay Pursuant to 11 U.S.C. §362(d) and Federal Rule of Bankruptcy Procedure 4001(a), as well as the Objection of the Debtor to the Excel Proof of Claim and Amended Proof of Claim (the "Bankruptcy Action"), and in connection with the action captioned as *Excel Financial Corp. v. Ashraful Islam and Dilruba Islam, Court of Court of Common Pleas of Montgomery County, Pennsylvania, No. 2020-02775* (the "State Court Action"), is entered into by the Debtor and Excel, as follows:

WHEREAS, Excel loaned a sum of money to the Debtor and his wife, Dilruba Islam ("D. Islam"), on September 19, 2017, pursuant to the terms of a Loan Agreement and Note which was secured by a Mortgage and other loan documents (collectively, the "Loan Documents") on the property located at 407-409 W. Main Street, Lansdale, PA 19446 (the "Lansdale Property") which, at that time, was owned by the Debtor and D. Islam as husband and wife.

WHEREAS, Excel contended that Debtor and D. Islam defaulted under the terms of the Loan Documents causing Excel to confess judgment against the Debtor and D. Islam in the State Court Action (the "Judgment");

WHEREAS, the Judgment operates as a lien against the Lansdale Property and the property located at 404 Doylestown Pike, Montgomeryville, PA (the "Montgomeryville Property") which, at that time, was also owned by the Debtor and D. Islam as husband and wife;

WHEREAS, the Debtor filed multiple voluntary Petitions under Chapter 13 of the Bankruptcy Code, docketed as Case Nos. 18-13518- amc, 18-17107- amc, and 21-10190-amc, and D. Islam filed one voluntary Petition under Chapter 13 of the Bankruptcy Code, docketed as Case No. 22-11061-elf;

WHEREAS, the Debtor filed the voluntary Petition for his current case under Chapter 13 of the Bankruptcy Code on November 29, 2022;

WHEREAS, Excel filed the pending Motion for Relief from Automatic Stay on December 19, 2022, as well as Proof of Claim No. 4 on February 2, 2023, which was amended on February 5, 2024;

WHEREAS, the Debtor filed an Objection to Excel's Proof of Claim on June 18, 2023, and a response to Excel's Motion for Relief from Automatic Stay; and

WHEREAS, the Parties, wishing to avoid further expense and the disruption of ongoing litigation, mutually desire to enter into a full and final settlement of the Action in accordance with the terms and conditions set forth below.

NOW THEREFORE, in consideration of their mutual promises and intending to be legally bound hereby, the Debtor and Excel do hereby covenant and agree as follows:

1. **Incorporation of Background.** The Background of this Settlement Agreement, consisting of the above recitals, is incorporated herein by reference as if fully set forth at length.

2. **Representations.** The Debtor represents and warrants the following:

    a. The Debtor and D. Islam are separated.

b. D. Islam has conveyed her ownership interest in the Lansdale Property and Montgomeryville Property (collectively, the "Properties") to the Debtor.

c. The Debtor is currently the fee simple owner of the Lansdale Property and the fee simple owner of the Montgomeryville Property, subject to any claim of Jeffrey Gruber at the September 24, 2020 tax sale of the Montgomeryville Property. Debtor shall provide copies of the recorded Deeds reflecting his fee simple ownership of the Properties as set forth above to Excel upon his execution of this Settlement Agreement.

d. The Debtor is legally blind but understands and speaks the English language as a second language.

e. The Debtor has been and continues to be represented by legal counsel, Regional Bankruptcy Center of Southeastern PA, P.C., with Roger V. Ashodian as lead counsel, who has read and explained the terms of this Settlement Agreement to Debtor.

3. **Settlement Terms.** The terms of the settlement to which the Parties have agreed are as follows:

a. **Payment:** the Debtor shall pay the sum of Three Hundred Fifty-Four Thousand Eight Hundred Thirteen Dollars and Twenty Cents ($354,813.20) to Excel in accordance with the following payment schedule:

(1) Three Hundred Ten Thousand Dollars ($310,000.00) payable in a lump sum to Excel within thirty (30) days of

3

      this Settlement Agreement being signed by the Debtor and Excel (the "First Payment");

  (2) Forty-Four Thousand Eight Hundred Thirteen Dollars and Twenty Cents ($44,813.20) payable to Excel within seven (7) months of the date of the First Payment (the "Deferred Payment").

**b.** **Interest Payments:** in lieu of interest accruing and payable by the Debtor on the Deferred Payment during the seven-month period between the First Payment and the Deferred Payment, the Debtor shall pay Excel the fixed sum of Three Hundred Seventy-Five Dollars ($375.00) per month for each month of the seven-month period between the First Payment and the Deferred Payment described in sections 3.a.(1) and (2) above; Debtor is not obligated for any further $375.00 monthly payments after tendering the Deferred Payment to Excel. Each such payment will be due on or before the 15th day of each month.

**c.** **Reimbursement of Premiums for Force-Placed Insurance.** The premises fire and liability insurance policy for the Lansdale Property was not paid by the Debtor causing a lapse in coverage. Excel, therefore, placed insurance with an insurance company for the Properties as permitted under the loan documents, causing Excel to pay One Thousand Four Hundred Twenty-Three Dollars and Ninety Cents ($1,423.90) in premium payments, as evidenced by Certificate of Insurance No. 1389392

4

previously emailed to Debtor's counsel on November 25, 2025. In addition to the amounts payable by the Debtor in Sections 3.a. and 3.b. above, the Debtor shall reimburse the amount of One Thousand Four Hundred Twenty-Three Dollars and Ninety Cents ($1,423.90) to Excel upon execution of this Settlement Agreement. The force-placed insurance coverage is part of a Lender's Master Policy which is available only to Excel as a lender and, therefore, is not transferable to the Debtor. Excel shall provide the Debtor with proof of payment of the force-placed insurance premiums and shall reimburse the Debtor for any refund in premium, if any, which Excel receives either by promptly cancelling the force-placed insurance policy after the Debtor procures his own insurance policy or as a result of the Debtor's providing proof of coverage for the Montgomeryville Property. Proof of such coverage with a paid receipt or Certificate of Insurance for the 7-month payment period described in Section 3.a. above must be provided to Excel upon execution of this Settlement Agreement. Should such coverage not be procured by Debtor causing Excel to incur additional force placed insurance premiums, the amount of such paid premiums shall be added to the amount to be reimbursed to Debtor hereunder.

    **d.**    **Payment Default:** the Debtor shall have the right to cure any payment default including the Deferred Payment or any interest payment within ten (10) days of the date a payment is due under the terms hereof without

Excel having to provide notice of payment default to the Debtor. The Debtor's failure to cure any single payment default shall entitle Excel to the remedies set forth in section 3.e. below.

e. **Excel's Remedies Upon Uncured Default on the Part of the Debtor:**

(1) In the event of an uncured default for non-payment of the First Payment on the part of the Debtor, this Settlement Agreement shall be void, and Excel shall have the unfettered right to exercise any and all state law remedies including execution upon the Judgment subjecting the Lansdale Property and Montgomeryville Property to Sheriff's Sale. Under such circumstances, the Debtor shall not interfere in any way nor have any right to prevent or delay a Sheriff's Sale including, but not limited to, the filing of another voluntary petition for bankruptcy under the Bankruptcy Code. In that case, all of the proceeds from a Sheriff's Sale shall be payable to Excel which shall be entitled to relief from the automatic stay to enforce its state law rights in the Properties.

(2) Payment of the First Payment by the Debtor to Excel shall be conducted through the services of a mutually agreeable title agency that will accept the First Payment from the Debtor and the documents from Excel needed to release the

        Judgment lien and Mortgage and any and all other obligations of the Debtor and D. Islam under the Loan Documents and against the Lansdale Property. The title agency shall act as escrow agent for the First Payment and release of the Judgment lien and Mortgage described above, disbursement of the First Payment amount to Excel and the filing of the appropriate documentation with the Court in the State Court Action and Montgomery County Recorder of Deeds such that, a standard title insurance policy can be issued to the new lender on the Lansdale Property. The Debtor shall be responsible for all filing fees to release the Judgment lien and Mortgage as against the Debtor and D. Islam and the Lansdale Property.

(3) In the event of an uncured default for non-payment of the Deferred Payment on the part of the Debtor, Excel shall have the unfettered right to exercise any and all state law remedies including execution upon the Judgment subjecting only the Montgomeryville Property to Sheriff's Sale. Under such circumstances, the Debtor shall not interfere in any way nor have any right to prevent or delay a Sheriff's Sale including, but not limited to, the filing of another

voluntary petition for bankruptcy under the Bankruptcy Code.

(4) Excel shall receive from the proceeds of any Sheriff's Sale of the Montgomeryville Property that may occur as a result of Debtor's default, in addition to the payments required in this Section 3, the sum of One Hundred Thousand Dollars ($100,000.00), with the balance of the proceeds, if any, payable to the Debtor.

(5) Following receipt of the Deferred Payment and that payment clearing in Excel's bank account, Excel shall file the appropriate documentation to mark the Judgment satisfied in the State Court Action and the Mortgage/Loan Documents as satisfied with the Montgomery County Recorder of Deeds. The Debtor shall be responsible for all filing fees to mark the Judgment satisfied and to record the Mortgage satisfaction.

f. **Execution Deadline.** This Agreement must be signed by the parties hereto on or before January 9, 2026. Should the Debtor fail to sign this Agreement by January 9, 2026, Debtor shall pay a per diem penalty of Fifty Dollars ($50.00) to Excel for each day Debtor delays in executing this Agreement beyond January 9, 2026.

4. **Mutual Release and Waiver of Claims**. In exchange for the consideration set forth in the preceding sections of this Settlement Agreement, the Parties, on behalf of themselves, their predecessors, successors, parents, subsidiaries, and affiliated corporations/entities, and all of their officers, directors, employees, investors, shareholders, administrators, predecessors and successor corporations/entities, and assigns, do hereby remise, release and forever discharge each other, and all of their officers, directors, employees, investors, shareholders, administrators, predecessors and successor corporations/entities, parents, subsidiaries, and affiliated corporations/entities, agents, attorneys, and assigns, of and from any and all past, present or future claims, duties, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation of any nature whatsoever, whether based on a tort, contract, or other theory of recovery, and whether for compensatory or punitive damages, which the Parties now have, or which may hereafter accrue, arising from or relating to the Bankruptcy Action and the State Court Action. The Parties agree that the releases set forth herein shall be and remain in effect in all respects as a complete and mutual general release as to the matters released. The Parties waive, and promise not to pursue, any and all claims settled by, and otherwise released in this Settlement Agreement. This Mutual Release, however, does not apply to a claim arising from the breach of this Settlement Agreement and shall only become effective upon the full execution of this Settlement Agreement.

5. **No Admission of Wrongdoing**. The Parties agree that nothing in this Settlement Agreement shall be construed as an admission or concession of liability or wrongdoing by any of the Parties as defined above. Rather, this Settlement Agreement is for the sole purpose of settling amicably any and all possible disputes between the Parties.

6. **Costs.** The Parties agree to bear their own attorneys' fees and all costs and fees arising out of this Settlement Agreement unless otherwise specifically stated herein.

7. **Entire Agreement.** It is further understood that this is the complete agreement and that there are no written or oral understandings or agreements, either directly or indirectly, that are not incorporated herein. No amendment to or modification of this Settlement Agreement shall be valid unless it is in writing and signed by the Parties.

8. **Governing Law and Jurisdiction.** This Settlement Agreement is made and entered into in the Commonwealth of Pennsylvania under the jurisdiction of the United States Bankruptcy Court for the Eastern District of Pennsylvania (Philadelphia), and in all respects shall be interpreted, enforced and governed under the laws of the United States Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. The terms of this Settlement Agreement in all cases shall be construed as a whole, according to their fair meaning, and not strictly for or against any of the parties hereto. Should any term of this Settlement Agreement be determined by any Court to be illegal and invalid, the validity of the remaining parts or terms shall not be affected thereby and said illegal or invalid part or term shall be deemed not to be a part of this Settlement.

9. **Representation by Counsel.** The Parties hereby declare that they have completely read the terms of this Settlement Agreement have discussed the terms of this settlement with their legal counsel; that they were given sufficient time to determine whether they wished to enter into this Settlement Agreement, including the Mutual Releases; that said terms are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims; that no promise or inducement not

expressed herein has been made to them; and to preclude forever any possible future or additional suits arising out of the Bankruptcy Action and the State Court Action.

10. **Confidentiality.** The Parties agree that the terms of this Settlement Agreement will be kept confidential and will not be disclosed except as required by law, to any third parties, other than the Parties' attorneys, accountants and advisors, except to the extent necessary to enforce or prove a breach of this Agreement or otherwise to establish a material fact in a judicial or arbitral proceeding.

11. **Non-Disparagement.** The Parties agree that they will not directly or indirectly, in any capacity or manner, make, express, transmit, speak, write, verbalize or otherwise communicate in any way including, but not limited to, social media and/or internet postings (or cause, further, assist, solicit, encourage, support or participate in any of the foregoing), any remark, comment, message, information, declaration, communication or other statement of any kind that might reasonably be construed to be derogatory or critical of, negative toward, or harmful to the other Party or any of the individual members of the Parties, or to act in any way to malign, harm, disparage, defame or damage the reputation or good name of the other Party, the individual shareholders, officers and directors of the Parties or the other Party's business or business interests.

12. **Authorship.** The Parties agree that this Settlement Agreement reflects the joint drafting efforts of all Parties. In the event any dispute, disagreement or controversy arises regarding this Settlement Agreement, the Parties shall be considered joint authors, and no provisions shall be interpreted against any Party because of authorship.

13. **Counterparts.** This Settlement Agreement may be executed simultaneously in two or more counterparts and by the different Parties on separate counterparts, each of which shall be deemed an original, but all such counterparts shall together constitute the same instrument.

14. **Notices.** Any Notices to be furnished hereunder shall be provided as follows:

To Excel Financial Corp.

Richard Frankel, President
Excel Financial Corp.
518 W. Lancaster Avenue
Haverford, PA 19041

With a copy to:

Robert H. Nemeroff, Esquire
Friedman Schuman Layser, P.C.
275 Commerce Drive, Suite 210
Fort Washington, PA 19034

To Ashraful Islam

407 West Main Street, #409
Lansdale, PA 19446

With a copy to:

Roger V. Ashodian, Esq.
Regional Bankruptcy Center of Southeastern PA, P.C.
101 West Chester Pike, Suite 1A
Havertown, PA 19083

15. **Severability.** No determination by any court, governmental body, arbitration or other judicial body that any provision of this agreement or any amendment hereto is invalid or unenforceable in any instance shall affect the validity or enforceability of any other provision of

12

this Agreement. Each provision shall be valid and enforceable to the fullest extent permitted by law and shall be construed where and whenever possible as being consistent with applicable law.

16. **Court Approval.** This Settlement Agreement shall be attached as an exhibit to a Stipulation to be signed by counsel for the parties hereto filed with and to be approved by the Court in the Bankruptcy Action, effectively causing this Settlement Agreement to become an Order of Court.

17. **Mutual Warranties and Representations.** THE PARTIES HERETO WARRANT AND REPRESENT TO THE OTHER THAT THEY HAVE READ THIS AGREEMENT CAREFULLY, OR IN THE CASE OF THE DEBTOR THAT HE HAS HAD THE AGREEMENT READ TO HIM IN FULL AND UNDERSTANDS ITS TERMS, BEFORE SIGNING AND HAVE EXECUTED THIS AGREEMENT VOLUNTARILY AND WITH FULL KNOWLEDGE AND UNDERSTANDING OF THE CONTENTS OF THIS AGREEMENT, INTENDING TO BE LEGALLY BOUND THEREBY.

In consideration of the terms of this Settlement Agreement and intending to be legally bound thereby, the parties have hereby executed this thirteen (13) page Settlement Agreement.

EXCEL FINANCIAL CORP.

BY _____   DATE: 1\9\26
Richard Frankel, President

_____   DATE: 01-08-2026
Ashraful Islam