**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** : | **CHAPTER 13** |
| : | |
| **ASHRAFUL M. ISLAM,** : | **BANKRUPTCY NO. 22-13182-AMC** |
| : | |
| Debtor. : | |

**OBJECTION OF MONTGOMERY COUNTY TAX CLAIM BUREAU TO
DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §364, BANKRUPTCY
RULE 4001(c), AND LOCAL BANKRUPTCY RULE 4001-1, FOR COURT
APPROVAL OF REFINANCING OF THE DEBTOR'S CURRENT MORTGAGE**

Montgomery County Tax Claim Bureau ("MCTCB"), by and through its undersigned counsel, Obermayer Rebmann Maxwell & Hippel LLP, hereby files this Objection (the "Objection") to Debtor, Ashraful M. Islam's (the "Debtor") Amended Motion Pursuant to 11 U.S.C. §364, Bankruptcy Rule 4001(c), and Local Bankruptcy Rule 4001-1, for Court Approval of Refinancing of the Debtor's Current Mortgage and Request for Expedited Consideration of the Motion (the "Amended Motion") and in support of thereof, MCTCB states as follows:

**I.    BACKGROUND**

1.    The Debtor is an individual who owns real property located at 409 W. Main Street, Lansdale, PA 19446, designated as Parcel No. 11-00-09548-00-8 (the "Lansdale Property") and at 404 Doylestown Pike, Montgomeryville, PA 18936, designated as Parcel No. 46-00-00811-00-7 (the "Montgomeryville Property," and together with the Lansdale Property, the "Properties").

2.    On November 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").

3. On or about the Petition Date, local real estate taxes on the Properties owed to MCTCB totaled $43,554.17 (the "Delinquent Prepetition Taxes").

4. On December 8, 2022, MCTCB filed a secured proof of claim in the Debtor's bankruptcy case in the amount of $30,320.52 [Claim No. 1-1] for property taxes on the Lansdale Property covering the years 2019 through 2020 including interest accruing at a statutory rate of nine percent (9%) per annum. See 53 P.S. § 7102 and 72 P.S. § 5860.306.

5. On December 8, 2022, MCTCB filed a secured proof of claim in the Debtor's bankruptcy case in the amount of $13,233.65 [Claim No. 2-1] for property taxes on the Montgomeryville Property covering the years 2018 through 2021 including interest accruing at a statutory rate of nine percent (9%) per annum. See 53 P.S. § 7102 and 72 P.S. § 5860.306

6. The Delinquent Prepetition Taxes assessed against the Property are secured by virtue of first-position liens attaching to the Property pursuant to 53 P.S. § 7102. Also, MCTCB's claim continues to accrue statutory postpetiton interest at the rate of nine percent (9%) per annum and costs pursuant to 72 P.S. § 5860.306 and section 506(b) of the Bankruptcy Code.

7. Pursuant to 72 P.S. §7102, MCTCB has perfected first-position liens on the Property for each unpaid tax year.

8. On February 2, 2023, Excel Financial Corp. ("Excel") filed a secured proof of claim in the Debtor's bankruptcy case in the amount of $346,136.80 [Claim No. 4-1] for money loaned to Debtor and secured by a recorded mortgage on the Lansdale Property.

9. On June 18, 2023, Debtor filed an objection to the proof of claim filed by Excel [D.I. 80] asking the Court to disallow Excel's claim.

10. On February 5, 2024, Excel filed an amended proof of claim in the amount of $345,974.83 [Claim 4-2].

11. On January 9, 2026, Debtor filed a Settlement Agreement & Mutual Release (the "Settlement Release"), which purported to compromise and resolve his objection to Excel's proof of claim and his financial disputes with Excel.

12. The Debtor has not requested approval of the settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

13. On February 25, 2026, Debtor filed his Motion Pursuant to 11 U.S.C. §364, Bankruptcy Rule 4001(c), and Local Bankruptcy Rule 4001-1, for Court Approval of Refinancing of the Debtor's Current Mortgage and Request for Expedited Consideration of the Motion [D.I. 220].

14. On February 28, 2026, Debtor filed his Amended Motion [D.I. 225].

15. To the extent that the Debtor intends borrow money and grant a lien on the Lansdale Property and pay Excel, a junior lienholder on the Lansdale and pay nothing to MCTCB, who holds the first priority lien on the Lansdale Property, the Debtor objects.

## II. LEGAL ARGUMENT

16. Pursuant to Section 364 of the Bankruptcy Code, a trustee (or a debtor in possession) may seek and obtain financing secured by the assets of the Debtor. 11 U.S.C. § 364(c), (d).

17. Under Section 364(d) of the Bankruptcy Code, a senior or equal lien on property of the bankrupt estate may be obtained under certain conditions. Because this power is extraordinary, due process consisting of notice, hearing and court authorization is required. 2 Collier on Bankruptcy, para. 364.05 (15th ed. 1989).

18. Since financing pursuant to Section 364(d) of the Bankruptcy Code contemplates the priming of other liens, a request under Section 364(d) must be acted upon more cautiously than

4936-0665-8963 v1

motions under the other provisions of Section 364. See generally In re Reading Tube Industries, Inc., 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987); 2 Collier on Bankruptcy, *supra,* para. 364.05, at 364-12.

19. In order to obtain financing under Section 364 of the Bankruptcy Code, the Debtor must demonstrate that:

> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d).

20. In order for the Court to approve financing under Section 364(c) or (d) of the Bankruptcy Code, a debtor must sustain the burden of establishing the following: (1) it is unable to obtain unsecured credit per Section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim per Section 503(b)(1)(A) of the Bankruptcy Code; (2) the credit transaction is necessary to preserve the assets of the estate; and (3) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender. See In re St. Mary Hosp., 86 B.R. 393, 401 (Bankr. E.D. Pa. 1988) (citing In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), aff'd, 75 B.R. 553 (E.D. Pa. 1987)).

21. The Court "may not approve any credit transaction under subsection (c) [of Section 364 of the Bankruptcy Code] unless the debtor demonstrates that it has attempted, but failed, to obtain unsecured credit under section 364(a) or (b)." In re Ames Dep't Stores, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).

22. As our courts have noted:

4

> We had several reasons for formulating this three-pronged test. Obtaining credit should be permitted not only because it is not available elsewhere, which could suggest the unsoundness of the basis for use of the funds generated by credit, but also because the credit acquired is of significant benefit to the debtor's estate and that the terms of the proposed loan are within the bounds of reason, irrespective or the inability of the debtor to obtain comparable credit elsewhere. As the decisions in *Crouse Group* and *St. Mary* indicate, respectively, credit should not be approved when it is sought for the primary benefit of a party other than the debtor or when funds are readily available from insiders or others without providing the lender with the benefits of any priority.

In re Aqua Assoc., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991).

23. The Debtor bears the burden of proof as to the issue of adequate protection. 11 U.S.C. § 364(d)(2).

24. "Given the fact that super priority financing displaces liens on which creditors have relied in extending credit, a court that is asked to authorize such financing must be particularly cautious when assessing whether the creditors so displaced are adequately protected." In re First South Sav. Ass'n, 820 F.2d 700, 710 (5th Cir. 1987).

25. MCTCB believes if the Debtor is attempting to prime MCTCB's lien, that there is no equity cushion to protect its interest in the property, and therefore, any priming lien and superpriority claim are inappropriate.

26. Where there is no equity cushion, section 364(d)(1)(B) cannot be satisfied. In re Reading Tube Indus., Inc., 72 B.R. 329, 333-34 (Bankr. E.D. Pa.1987).

27. Courts have held that an equity cushion of 20% or more constitutes adequate protection. Drake v. Franklin Equip. Co. (In re Franklin Equip. Co.), 416 B.R. 483, 528 (Bankr. E.D. Va. 2009).

28. Other cases have stated that the important question in determining the adequacy of protection under Section 364(d)(1)(B) of the Bankruptcy Code is whether the interest of the

5

4936-0665-8963 v1

secured creditor whose lien is to be primed "is being unjustifiably jeopardized." In re Plabell Rubber Products, Inc., 137 Bankr. 897, 899 (Bankr. N.D.Ohio 1992) (quoting In re Aqua Assoc., 123 B.R. at 196).

29. "The amount of equity cushion sufficient to adequately protect the creditor is determined on a case-by-case basis." In re Kost, 102 B.R. 829, 831 (D. Wyo. 1989).

30. Here, it is respectfully submitted that if the Debtor is attempting to prime MCTCB's lien, there will be an inadequate equity cushion to adequately protect MCTCB's lien.

31. The Debtor has not demonstrated that he has attempted, but failed, to obtain unsecured credit under section 364(a) or (b).

32. In addition, the Debtor has not complied with Local Bankruptcy Rule 4001-1.

33. The Motion should not be granted because it purportedly supports a settlement agreement with Excel Financial that has not been approved by the Bankruptcy Court and no approval under Bankruptcy Rule 9019 has been sought by the Debtor.

34. Under the terms of that settlement agreement, the Debtor was to pay $310,000 by February 9, 2026, but the settlement agreement does not say where that money came from. If the $310,000 was not paid, the Debtor is in breach of the settlement agreement and the cure period has passed.

35. The motion does not indicate all of the terms of the post petition loan agreement or attach a copy of the loan agreement.

36. The lender, John Schvetz, previously paid the delinquent post petition taxes of the Debtor on the Lansdale Property for 2023 in the amount of $6,610.04 on September 9, 2024. A copy of the Receipt for that payment is attached as Exhibit "A".

37. The Debtor did not seek approval to borrow those funds from Mr. Schvetz prior to the September 9 payment being made.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, MCTCB respectfully requests that this Court enter an order denying the Amended Motion in full and granting such other and further relief as this Court deems just and equitable.

Respectfully submitted,

Dated: March 11, 2026

By: */s/ Michael D. Vagnoni*
Michael D. Vagnoni, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
(215) 665-3066 – Phone
(215) 665-3165 – Facsimile
Email: michael.vagnoni@obermayer.com
*Counsel to Montgomery County Tax Claim Bureau*

4936-0665-8963 v1